LODUSKY HAYWARD *et al.*

*v.*

GIDEON B. LOPER *et al.*

*Filed at Springfield October 27, 1893.*

1. WILLS—*presumption that no part of estate is left undisposed of.* Where a party makes a will it will be presumed that he intends to dispose of his entire estate, unless such presumption is clearly rebutted by its provisions, or evidence to the contrary. The courts will so construe a will as not to make the testator die intestate as to any part of his estate, unless it is impossible to so construe it as to give effect to what may be fairly collected to have been his intention.

2. SAME—*construed, as to whether entire estate passes by devise and codicil.* A testator, after making certain specific legacies to a portion of his children and grandchildren, devised the residue of his estate to a son and two daughters, in equal shares. Six years after the date of the will the testator made a codicil, in which he provided that the residuary shares of his son and two daughters should be reduced in unequal amounts, but made no disposition of the sum of such reductions: *Held,* that the testator did not intend by the codicil to divert any part of the residuum of his estate from the residuary legatees, but simply intended to change the portions given them, relatively, as between themselves. The intention was to change the prior equal distribution of the residue of the estate among the residuary legatees, and to make them share unequally in the same.

3. SAME—*rule of construction.* The object of construction in the case of wills is to ascertain the intention of the testator, and in the absence of latent ambiguity this is to be gathered from the will and codicil considered as a whole, giving to each part the ordinary and natural meaning of the words employed, unless they are restrained and controlled by other words or clauses, or by the general purpose of the testator expressed in the will.

4. SAME—*extrinsic evidence to explain ambiguity.* Where an ambiguity in a will is not latent, extrinsic evidence is inadmissible to explain the will or to show the intention of the testator.

5. SAME—*ademption of legacy.* A testator made, by his will, a devise of a legacy of $3000 to one of his daughters, to be paid after his death, and afterward, by agreement of the testator and the daughter, she received her portion, for which she gave her note, with interest, which interest she paid until the testator's death, when the principal was intended to have been payable, but by mistake it was made to read payable at her death: *Held,* that the transaction, in effect, amounted to an ademption of the legacy, and that the legacy should be ordered satisfied by the court, on surrender of the note by the executor.

6. ADMINISTRATION OF ESTATE—*jurisdiction to have legacy discharged.* The county court, and the circuit court on appeal, in the settlement of an estate, has ample power to require executors to surrender a note given by a legatee to a testator for the amount of the legacy advanced in his lifetime, and to declare the specific legacy thereby paid.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

The executors of the last will of Adrain W. Loper, deceased, presented their petition to the county court, praying for an order of distribution, etc. The cause having been there heard and determined, an appeal was taken to the circuit court, where an order of distribution was entered, from which an appeal was prosecuted to the Appellate Court, where the order of the circuit court was affirmed, and an appeal therefrom is prosecuted here.

To present the points determined, it will be necessary to state that by the original will the testator disposed of his whole estate, giving his homestead, with the household furniture, etc., to his wife for her natural life, a special legacy of $3000 to his daughter Lodusky, a special legacy of $1500 to his daughter Lena, the same to each of his two granddaughters, one dollar to his son Cruce, and the residuum of his estate, together with the wife's portion at her death, to be divided into three equal shares,—one to his son Gideon B., one to his daughter Ophelia, and one to his daughter Adriana. By another clause he specially declared that he desired the three last named children to share equally and alike in all his property after the payment of the special legacies. The will was dated May 27, 1873. On the 22d of April, 1879, the testator executed a codicil, in which, after reciting the provisions of the will as to the residuary legatees and devisees, he provided as follows: "First, that the share of my son Gideon B. Loper be reduced the amount of fifty hundred dollars, ($5000); second, that the share of my daughter Ophelia, the wife of Henry Duckels, be reduced the amount of eighty hundred dollars ($8000); third, that the share of my daughter Adriana, the wife of Charles Wright, be reduced the amount of thirty-six hundred dollars ($3600)." On the 20th day of August, 1889, he made another codicil, by which he gave his son Cruce a certain tract of land for his natural life, and after his death the same was to be divided between the heirs of the said Cruce, share and share alike.

The executors asked, among other things, to discharge the legacy to Lodusky Hayward by the cancellation, and delivery to her, of the following note or instrument in writing:

"$3000.               CHESTERFIELD, ILL., *February 1, 1875.*

"After date I promise to pay to the order of A. W. Loper, note to run during my natural life, three thousand dollars, value received, with eight per cent per annum from date.

                        LODUSKY L. HAYWARD."

Mr. VICTOR M. GORE, and Messrs. ANDERSON & BELL, for the appellants:

Extrinsic evidence is not admissible to explain a will, except in case of a latent ambiguity, or to create such an ambiguity. *Kinney* v. *Kinney*, 34 Mich. 250; *Banta* v. *Boyd*, 118 Ill. 186; *Martindale* v. *Warren*, 15 Pa. St. 471; 80 id. 348.

A will is to be so construed as to give effect to every part. *Bland* v. *Bland*, 103 Ill. 11; *Raintree* v. *Talbott*, 89 id. 249; *Burgan* v. *Cahill*, 55 id. 160.

A later clause in a will, repugnant to a former provision, shows an intention to modify or abrogate a former one. *Osborn* v. *Bank*, 116 Ill. 130; *McNeill* v. *Caruthers*, 4 Bradw. 542; *Basley* v. *Wyatt*, 14 How. 390; *Brunfield* v. *Wilson*, 78 Ill. 467.

The presumption that a testator, when he makes a will, intends to dispose of all his property, may be rebutted in many ways, but in no way more effectually than by the provisions of the will. *Higgins* v. *Dwen*, 100 Ill. 554.

When a part or all of the residuum of an estate fails, it never goes to the residuary legatees, but always descends as intestate property. *Lumbard* v. *Boyden*, 5 Allen, 249; *Ford* v. *Ford*, 1 Swan, 431; *Chadwick* v. *Chadwick*, 37 N. J. Eq. 71; *Garthwaite* v. *Lewis*, 25 id. 351; *Link* v. *Link*, 52 How. Pr. 400; *Ford* v. *Whedbee*, 1 D. & B. Eq. 21; *Byers* v. *Byers*, 6 Dana, 312.

The nullity of a donation or "reduction" in a will inures to the benefit of the heirs of the testator. *Carmena* v. *Blany*, 16

La. Ann. 345; *Buleman* v. *Johnson,* 23 N. Y. 298; *Floyd* v. *Barker,* 1·Paige, 480; *Chapeau's Estate,* 1 Tuck. 416; *Skrymsher* v. *Northcote,* 1 Swanst. 570; *Humbl* v. *Shore,* 7 Hare, 247; *Lloyd* v. *Lloyd,* 4 Beav. 131; *In re Wood,* 29 id. 246; *Transportation Co.* v. *Gill,* 92 Ill. 249; 111 id. 541.

Mr. L. P. PEEBLES, and Messrs. RINAKER & RINAKER, for the appellees:

In the absence of a clearly expressed intention to the contrary, it will be presumed that the testator intended by his will to dispose of his entire estate. 2 Redfield on Wills, 235, 464; 2 Jarman on Wills, 469; 2 Woerner's Law of Administration, 883; *Taubenhan* v̀. *Durey,* 20 Bradw. 262; 125 Ill. 524; *Siddons* v. *Cockrell,* 131 id. 653; *Missionary Society* v. *Meade,* 131 id. 338; *Higgins* v. *Dwen,* 100 id. 554; *Jencks* v. *Jackson,* 127 id. 341.

The extrinsic evidence was properly admissible. *Missionary Society* v. *Meade,* 131 Ill. 338; *Woolly* v. *Schrader,* 116 id. 37; *Kirk* v. *Eddows,* 3 Hare, 509; *Richardson* v. *Eveland,* 126 Ill. 37; 2 Redfield on Wills, 539, 540; 1 id. 496, sec. 2, p. 662, sec. 70, note 144.

The intention of the testator governs. *Hamilton* v. *Express Co.* 107 Ill. 443; *Johnson* v. *Johnson,* 98 id. 564; *Banta* v. *Boyd,* 118. id. 190.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

Two questions are presented for consideration, the first arising upon the construction of the will and first codicil, and the second, as to whether the legacy to Lodusky was paid by the cancellation and surrender of her note.

*First*—The special legatees contend that the sums mentioned in the first codicil, and aggregating $16,600, were withdrawn from the residuum, and descended to the heirs-at-law as intestate estate; that the testator having declared, by the codicil, that the share of Gideon B. Loper, which con-

sisted of one-third of the testator's estate after paying specific legacies, should "be reduced" $5000, and the like share of his daughter Ophelia should "be reduced" $8000, and the like share of his daughter Adriana should "be reduced" $3600, these several sums were raised out of the residuum, and, the testator having left the same undisposed of, it descended to his heirs-at-law. The circuit court found contrary to this contention, and ordered distribution, after payment of the specific legacies and expenses of administration, to and among the three residuary legatees, treating the several amounts mentioned in the codicil as intended to equalize the distribution of the residuum among them, the court holding, in effect, that the intention of the testator was not to divert any portion of the residuum of his estate from the three persons named as residuary legatees, but to change the portions, relatively, as between them.

Counsel for appellant, in their very able brief, call our attention to a line of authorities holding that where a portion or all of the devise of a residuum fails, it becomes intestate estate and descends to the heir-at-law. The distinction between the disposition the law makes of a lapsed specific legacy, which, in the absence of a contrary intention manifested, necessarily falls into the residuum, and a lapsed or diminished portion of the residuum, is clearly defined. And it may, we think, be conceded, that if the residuary legacy to either Gideon, Ophelia or Adriana had lapsed for any reason, his or her interest could not have gone to the remaining residuary legatees, but to the heir-at-law, without affecting the determination of this case. Before that principle would become applicable, it must be found that the residuary legacy has been diminished or reduced, and the portion taken from the legatee not otherwise disposed of by the will.

It is to be presumed that the testator intended to dispose of his entire estate by his will, unless the presumption is rebutted by its provisions, or evidence to the contrary. (*Higgins*

v. *Dwen,* 100 Ill. 554; *Taubenhan* v. *Dunz,* 125 id. 524.) In 2 Redfield on Wills, 235, it is said: "The idea of any one deliberately purposing to die testate as to a portion of his estate and intestate as to another portion, is so unusual in the history of testamentary dispositions as to justify almost any construction to escape from it." In *Leake* v. *Robinson,* 2 Mer. 363, it is by Sir William GRANT, M. R., said: "There is certainly a strong deposition in the courts to construe a residuary clause so as to prevent an intestacy with regard to any of the testator's property." In *Lett* v. *Randall,* 10 Sim. 112, it is said by the vice-chancellor, that "one does not like to construe a will so as to make the testator die intestate, unless it is impossible to so construe it as to give effect to what may be fairly collected to have been his intention." See, also, 2 Jarman on Wills, 469; *Schofield* v. *Olcott,* 120 Ill. 362.

It is clear that the testator originally intended to dispose of his entire estate, and did so in apt words, and the question is, whether by the codicil a different intention is clearly manifested. After having made the specific legacies to his daughters Lodusky and Lena, his son Cruce, and to his granddaughters, he gave, by the seventh clause of his will, the residuum of his estate to his three children, Gideon, Ophelia and Adriana, in equal parts, and with needless particularity expresses this intention, and adds separate clauses, giving to each one of said residuary legatees the *one-third part* of all his property, real and personal, after the special legacies are paid. Practically six years later this codicil was made, in which the testator recited these clauses, giving to each one-third of the residue. It is to be noticed that there is in this codicil no expressed intention of changing the devise of the residuum of his estate, the provision being, merely, that the respective portions which before then had been equal, should be reduced in unequal amounts. If we were permitted to look beyond the will itself, and into the offered evidence tending to show the changed condition of the testator's estate,

and what had been done with property that would have fallen into the residuum under the original will, no difficulty would be experienced in determining the purpose and intent of the testator. But the ambiguity, if any exists, is not latent, and extrinsic evidence is therefore not admissible to explain the will or show the intention of the testator. (*Taubenhan* v. *Dunz, supra,* and cases cited.) The object of construction is to ascertain the intention of the testator, and in the absence of latent ambiguity this is to be gathered alone from the will and codicil, considered as a whole, giving to each part the ordinary and natural meaning of the words employed, unless they are restrained and controlled by other words or clauses, or by the general purpose of the testator, expressed in the will. The will and codicil are to be construed together as one instrument, and force and effect are to be given to the words of each, except so far as the former may be changed, modified or restrained by the latter.

It is insisted, with great earnestness, that the words "be reduced," mean, there shall be taken from the respective shares the amount named,—that is, there is by these words excepted out of the residuary legacies the aggregate sum of $16,600. While this may be said to be one, and perhaps the ordinary, meaning of the word "reduced," it is not the only one in common and ordinary use. Worcester's second definition is: "To bring to a former state; to restore." Third: "To bring into any state, but generally one of diminution, subordination or order," etc. Webster:—"2. To bring to a state or condition specified, usually inferior or weaker, sometimes indifferent," etc. "3. To bring to inferior state, with respect to rank, size, quality, value or the like; to diminish; to lower; to degrade or impair," etc. When this language of the codicil is construed in connection with the preceding clause, the meaning of the testator becomes apparent. He recites, specifically, that on the 27th day of May, 1873, he had made his last will and testament, in writing, by which he had given and be-

queathed to his son Gideon the *one-third part* of all his property, real and personal, after the special legacies are paid, and then follow like recitals in respect of the two other residuary legatees. And the testator then says : "Now, therefore, I do by this writing, which I  *  *  *  declare to be a codicil," etc., "order and declare that my will is,  *  *  *  the share of my son Gideon *be reduced,*" etc., using the same language in respect to each of the others.  It is "therefore," because of that which had preceded, that he orders the reduction of the several legacies. By reason of the fact that he had by his will bequeathed to his son Gideon "the *one-third part* of my property, both real and personal, after the special legacies are paid," and a like *third* to each of the other two, the reduction is ordered. Here was an express recognition that the residuum was to go to the three, but because, by reason of the fact that he had made them equal,—that he had given to each a third, so that if they took under the will they would take equally, and because of that,—he requires the amount to be reduced by the unequal sums. It seems clear that the testator meant to bring the distribution of the estate among the legatees into a different order from that prescribed by the original will, and place them upon an unequal basis in the distribution, by lessening, diminishing and lowering the portions by the unequal amounts specified in the codicil, by which they were to be severally reduced. For some reason satisfactory to the testator he regarded the equal distribution of the residuum as no longer just, and whether by reason of advancements made, or other cause, desired to so distribute the residuum that before Ophelia could take, Gideon must be paid $3000 and Adriana $4400. This is consistent with the conduct of the testator in the disposition of his property throughout, while any other construction is inconsistent with every other provision of the will, and with the evident purpose and intention of the testator to make complete disposition of his property. Thus, he had made provision for his wife which he regarded ample, yet if

he can be presumed to have intended to raise out of the residuary legacies $16,600, over $5500 of this would go to the widow. He would add one-half to the special legacy of his daughter Lodusky, doubling that to Lena and the granddaughters, giving $1500 to his son Cruce, who already, as recited in the will, had received his portion of the testator's estate, and had receipted for the same prior to the date of the will. Moreover, if it were permissible to look at the condition of the estate, it would be apparent that this sum of $16,600 would not remain after payment of the special legacies, and the residuary legatees would receive nothing if that sum was to be taken out of the residuary legacies.

The codicil bears evidence of having been prepared by a person not familiar or learned in the forms of making testamentary dispositions. Without, however, entering upon this subject, or further discussion, we are of opinion that the circuit court gave the proper construction to the will and codicil.

*Second.*—The evidence introduced upon the second point shows, that soon after the execution of the will, the husband of Lodusky, residing with her then in Minneapolis, wrote to the deceased, suggesting that it would be agreeable to them to take whatever sum would be hers out of the estate at his death, and pay interest upon it during the life of the testator, and it was finally agreed that this should be done, and that she should give her note for the sum of $3000, payable at the death of the testator, with interest at eight per cent per annum. The rate of interest then obtainable in Minneapolis was higher, and the arrangement was a good one for her for that reason, if for no other. The correspondence was all between her husband and the testator, but she admits, in her answer to the petition, that her husband was acting for her and with her consent. The instrument before set out was written at the dictation of the testator, by his daughter Lena, and was signed by said Lodusky as such note, and to evidence the money so advanced. This is practically uncontroverted. Mrs. Hay-

ward paid the interest until after the death of her father, and then refused to pay any more, saying that the interest then ceased. It is now insisted by her that the note is not payable until her death,—that the money was a loan, and that she is entitled to her legacy in money. It is shown by the testimony of the daughter Lena, that she wrote the instrument at the dictation of her father, and followed the language of dictation, "note to run during *my* natural life." The evidence shows conclusively that it was executed under the agreement, by which the testator advanced to Lodusky what he regarded as her share of his estate. She paid the interest regularly for fourteen years, and then stopped, because interest was no longer payable. Her admissions and declarations show that she understood that the note was payable at her father's death, and was then to be accepted upon her distributive share of the estate. The transaction having occurred after the making of the will, in effect amounted to an ademption of the legacy of Lodusky Hayward, the proof showing, as before stated, that it was accepted in lieu of her portion of the testator's estate, but coupled with the agreement that she should pay interest, in consideration of the advancement, during his life. It being shown that the provision of the note for payment at the death of the maker was a mutual mistake of fact, upon its surrender satisfaction of the special legacy could be made on account of the original consideration passing to the legatee. The county court, and the circuit court on appeal from that court, in the settlement of the estate, had ample power to require the executors to surrender the note, and to find and declare the specific legacy paid, and determined correctly in so doing.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE PHILLIPS, having heard the case below, took no part in this court.