ARTHUR J. HAWHE

v.

THE CHICAGO AND WESTERN INDIANA RAILROAD CO. *et al.*

*Filed at Ottawa January 19, 1897—Rehearing denied March 9, 1897.*

1. WILLS—*extrinsic evidence is not admissible to show intention where there is no latent ambiguity.* Where a will contains no latent ambiguity the testator's intention must be determined from the language of the will itself, and extrinsic evidence cannot be resorted to.

2. SAME—*extrinsic evidence is admissible to aid the language of a will.* In construing a will, evidence of the condition of the testator's mind at the time he executed the will, whether he lived with his family, and how much of a family he had, etc., is admissible to give the court the testator's situation, so that the will may be read in the light in which it was written.

3. SAME—*intention to disinherit after-born child need not be expressly stated.* A will disposing of the testator's entire estate to his wife absolutely, with power to sell and convey the same as "fully, amply and completely" as could the testator in his lifetime, sufficiently shows an intention to disinherit a child born two months after making the will, where the testator had two other children living when the will was executed for whom he made no provision. (*Ward v. Ward,* 120 Ill. 111, and *Salem Nat. Bank v. White,* 159 id. 136, distinguished and explained.)

MAGRUDER, C. J., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

This was a bill in chancery brought in the circuit court of Cook county by Arthur J. Hawhe, against the Chicago and Western Indiana Railroad Company and the Wabash Railroad Company, for partition of certain lands and for an accounting.

It appears from the record that on or about December 31, 1872, Col. Arthur J. Hawhe died testate in Chicago, seized of the premises described in the bill of complaint. On the afternoon preceding his death he executed a will, by which he devised all of his property to his wife. The will was as follows:

165—36

"*In the name of God, Amen.*—I, Arthur J. Hawhe, of the city of Chicago, in the State of Illinois, being conscious that I am approaching my final dissolution, and while in full possession of my mental faculties, do make this my last will and testament:

"*First*—I direct and desire that I shall be interred to the rites of a christian burial.

"*Second*—I direct and desire that all my just-debts be paid.

"*Third*—I hereby will, devise and bequeath all of my estate, real, personal and mixed, and of every kind whatsoever, to my beloved wife, Mary H. Hawhe, giving my said wife full power and authority to collect all debts and to compromise all debts due me, to pay all my debts and sell any and all of my estate, both personal·and real, and to convey the same by bill of sale and by deed of conveyance as fully, amply and completely as I could have done in my own lifetime. I hereby appoint my beloved wife, Mary H. Hawhe, and her father, Rev. James Hill, executrix and executor of this my last will and testament."

The will was admitted to probate January 7, 1873. The executrix and executor named in the will declining to serve, the court appointed an administrator with the will annexed. At the time of the testator's death his family consisted of his wife, a daughter, aged four years, and a son, aged two years. The appellant, Arthur J. Hawhe, was born about two months after the testator's death. The land involved was owned by the testator at the time of his death, and in August, 1880, it was conveyed to the Chicago and Western Indiana Railroad Company by Mary H. Hawhe, as the widow and sole devisee of the testator, by one Waughop, her attorney in fact. The power of attorney gave him authority to "sign, seal, execute and deliver a quit-claim deed of all her right, title and interest in and to lots 43, etc., to any person or party he may see proper," etc.

The appellant predicated his right of recovery on the fact that he was a posthumous child, and as such he was entitled to recover an undivided one-third interest in the land; but on the hearing, on the pleading and evidence, the court entered a decree denying such right and dismissing the bill.

EDWARD T. CAHILL, for appellant:

The intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law.  *Kurtz* v. *Hibner*, 55 Ill. 514.

In case of a supposed ambiguity appearing upon the face of the will, parol evidence is not admissible to supply or contradict, or enlarge or vary, the words of the will, or to explain the intention of the testator.  *Pennsylvania Co.* v. *Bauerle*, 143 Ill. 459.

Surrounding circumstances cannot be resorted to for the purpose of importing into the will any intention which is not there expressed.  *Bingel* v. *Volz*, 142 Ill. 214.

It must be apparent from the will that the testator intended that the unborn child should not be specially provided for.  *Railroad Co.* v. *Wasserman*, 22 Fed. Rep. 872.

EDGAR A. BANCROFT, (S. A. LYNDE, of counsel,) for appellees:

The court will look at the circumstances under which the devisor makes his will, as, the state of his property, of his family, etc.  2 Jarman on Wills, (5th Am. ed.) 841.

It is proper to show the situation of the testator, the number of his family and their means of subsistence, actual and prospective, at the time he made his will.  *Little* v. *Giles*, 25 Neb. 313.

In construing a will the intention of the testator, as manifested by the words of the writings, in connection with surrounding circumstances, must be given effect.  *Estate of Stebbins*, 94 Mich. 304;  *Pool* v. *Blakie*, 53 Ill. 495.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first claimed in the argument by complainant's solicitor, that the court erred in allowing evidence tending to prove the condition and character of the testator's estate; evidence of the testator's testamentary capacity when he executed the will; evidence that he was residing with his family, consisting of his wife and two children;

and also evidence of one of the witnesses to the will that the testator "sat up in the bed and read the will deliberately before he signed it," and that he died that night.

With reference to the character and condition of the testator's estate, we find no evidence bearing on that question in the record except the inventory filed by the administrator with the will annexed, in the probate court,—and that, as appears from the abstract, was put in evidence by the complainant.

In regard to the capacity of the testator to make a will, that was a question controverted by no one, and proof of the fact could in nowise prejudice complainant.

But it is said, evidence that the testator was residing with his family, consisting of his wife and two children, and evidence of his testamentary capacity and physical condition when he signed the will, tended to prove the testator's intention outside of the will, and hence was incompetent. The law is well settled that extrinsic evidence cannot be resorted to to show the intention of a testator where there is no latent ambiguity in the will, but the intention is to be determined from the language used by the testator in the will itself. (*Hayward* v. *Loper*, 147 Ill. 41.) But we do not think the evidence objected to had any tendency whatever to vary or change the intent of the testator as declared in the will. As we understand the record, the evidence was not offered for that purpose. The object of the evidence was to place before the court the circumstances attending the execution of the will in support of and in aid of the intention of the testator as declared in the will, and the court, in the exercise of its discretion, had the right to hear such evidence. In the discussion of this subject it is said in Schouler on Wills (sec. 579): "But to aid the context of the instrument by extrinsic proof of the circumstances and situation of the testator when it was executed is constantly permitted at the court's discretion, and this constitutes a proper, indeed, often an indispensable, mat-

ter of inquiry when construing a will, for whatever a will
may set forth on its face, its application is to persons
and things external, and hence is admitted evidence,
outside the instrument, of facts and circumstances which
have any tendency to give effect and operation to the
terms of the will, such as the names, descriptions and
designation of beneficiaries named in the will; the rela-
tion they occupied to the testator; whether the testator
was married or single, and who were his family; what
was the state of his property when he made his will and
when he died, and other like collateral circumstances.
Such evidence, being explanatory and incidental, is ad-
mitted, not for the purpose of introducing new words of
a new intention into the will, but so as to give an intelli-
gent construction to the words actually used, consistent
with the real state of the testator's family and property,
—in short, so as to enable the court to stand in the tes-
tator's place, and read it in the light of those surround-
ings under which it was written and executed." (See,
also, *Little* v. *Giles*, 25 Neb. 313; *Doe* v. *Hiscock*, 5 M. & N.
363.) Here the evidence showed the will was executed
on the day of the testator's death, and doubtless in an-
ticipation of that event,—only a short time before com-
plainant's birth; that the testator was then residing
with his family, composed of his wife, a daughter and a
son. The evidence did not in the least modify or change
the intention of the testator as expressed in the will, but
it gave the court the situation of the testator, so that it
might with more ease properly place a construction on
the language of the will as it was written.

But the real question presented by the record is, was
it the intention of the testator, in view of all the provi-
sions of the will, to disinherit the complainant in the bill.
Section 10, chapter 39, of our Statute of Descents, pro-
vides: "If, after making a last will and testament, a child
shall be born to any testator, and no provision be made
in such will for such child, the will shall not on that

account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given shall be abated in equal proportions, to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate." Here, if the testator had died intestate, the complainant would have inherited one-third of the land in question, subject to the dower of his mother, and it is claimed by him that it was not intended by the testator, by the will, to disinherit him, hence he is entitled to recover in like manner as if the testator had died intestate.

The testator, in his will, made no allusion whatever to any of his children,—those then born or those that might thereafter be born,—but devised all of his property to his wife, and in doing so used language that is very significant, meaning more than a simple devise. The will declares: "I hereby will, devise and bequeath all of my estate, real, personal and mixed, and of every kind whatsoever, to my beloved wife, Mary H. Hawhe, giving my said wife full power and authority to collect all debts and to compromise all debts due me, to pay all my debts, to sell any and all of my estate, both real and personal, and to convey the same by bill of sale and by deed of conveyance as fully, amply and completely as I could have done in my lifetime." Language could not have been used which would more clearly express an intention that the wife, and she alone, should take and hold the testator's estate to the exclusion of all others, than the language here employed. If the testator had inserted a clause in his will that no other person should have any portion of his estate, such a provision would have excluded the two children then born and those that might thereafter be born; and yet such a provision would not have made the intention of the testator more definite and certain that the wife should have his entire estate, as

declared in the will. The testator, in drafting his will, did not stop by simply devising all of his estate to his wife, but in order to remove all doubt in regard to his intention he went further, and declared, "giving my said wife full power and authority to sell any and all of my estate, both real and personal, and to convey the same by bill of sale and by deed of conveyance as fully, amply and completely as I could have done in my lifetime." Why should he insert this language unless he intended that his wife, and she alone, should have his entire estate to the exclusion of all others?

There is another significant fact which has an important bearing on the construction of the will. At the time the will was executed by the testator he had two children then living, one four and the other two years old. These children were excluded from taking any portion of the testator's estate by the will. Is it reasonable to believe that the testator intended to exclude these two infants and not at the same time exclude another child to be born within the next two months after the will was executed? It seems plain, if the testator had intended to make any distinction between his children then born or unborn, he would have inserted a provision in his will manifesting that intention. In order to disinherit appellant the testator was not required to state the fact in express terms in the will. It is enough that the intention appears from the will, upon consideration of all of its provisions.

The statute involved in this case was before the court in *Osborn* v. *Jefferson Nat. Bank*, 116 Ill. 130, and in the decision of that case it was among other things said (p. 136): "But whether any provision is made for after-born children or not, the will, under this statute, must still remain as originally made, 'if it shall appear by such will that it was the intention of the testator to disinherit such child' or children. Does such intention appear by this will? That it does in case the husband of the testatrix survived her is too plain to admit of argument. A mere

reading of the instrument is all that is required to demonstrate that. But counsel urge that this intention must be stated in express terms in the will itself. This the legislature have not, by the statute, seen proper to require, and we have no right or power to add to it words which would entirely change its plain meaning, and thus virtually repeal the statute. It is elementary in the construction of wills that the intention of the testator must be given effect to, and to ascertain this the whole will should be looked to and taken into consideration. The testatrix in this case had the power to disinherit her after-born children, and she has seen proper to do it upon a contingency which has happened, and great as the hardship to them may be, we feel constrained to hold that the will, under this statute, is valid, and must be enforced as their mother made it and allowed it to remain, unrevoked and unchanged, till her death."

Counsel for appellant has cited *Ward* v. *Ward*, 120 Ill. 111, and *Salem Nat. Bank* v. *White*, 159 id. 136, as cases sustaining his position. Upon an examination of those cases it will be found that they differ so materially from the case under consideration that they cannot control here. In the *Ward case* the testator made provision for all of his children living at the time of his death, and the point decided was, how the various legacies should abate to allow the posthumous child to take. In the *White case* the testator made his will June 8, 1860, devising all the real estate to his widow and three children. Two years later another son was born, and a year and six months after that the testator died without changing his will. Under the facts as they there appeared the court very properly held there was nothing to show an intent on the part of the testator to disinherit the after-born child.

*Bresee* v. *Stiles*, 22 Wis. 120, has also been cited as an authority. In that case the will was executed in April, 1855, and the testator devised his property to his wife and seven children then living. Between November,

1855, and September, 1859, three other children were born, and the testator died August, 1861, without changing his will. There, as in the *White case*, the court held that there was nothing in the will showing an intent to disinherit the after-born children. As the testator made provision for all his children at the time the will was made, it was apparent that there was no intention of disinheriting those who were born after the will was made and before the testator died. While we might not concur in all that is said in the opinion in that case on the facts before the court, we find no fault with the decision.

We have also been referred to *Chicago, Burlington and Quincy Railroad Co.* v. *Wasserman*, 22 Fed. Rep. 872, as an authority sustaining the position of appellant. While the facts in that case are quite similar to the facts in this case, and the opinion delivered by the eminent jurist seems to sustain appellant's view of the law, we are not inclined to follow it.

We have also been referred to cases decided in other States, but upon an examination it will be found that the decisions are predicated on statutes different from ours, and what may have been decided where the facts are different or where the statute differs from ours cannot be held to be authority controlling the construction which should be placed upon our statute.

We are satisfied, after a careful consideration of the will of the testator, that it was his intention that his children, including appellant, should take no part of his estate, but that all of his estate, of every description, should go to his wife.

The decree of the circuit court will be affirmed.

*Decree affirmed.*

Mr. CHIEF JUSTICE MAGRUDER, dissenting.