(No. 10985.)

CHARLOTTE O. McDole, Appellant, *vs.* LUELLA THURM
*et al.* Appellees.

*Opinion filed December 21, 1916.*

1. WILLS—*when wife may take as devisee notwithstanding her
marriage was invalid.* The rights of a devisee are to be deter-
mined by the intention of the testator, and the fact that a marriage
is invalid will not prevent the ostensible wife of the testator from
taking as devisee where the testator gives the property to her as
his wife, naming her, even though the record is sufficient to raise
the presumption that he knew the marriage was invalid.

2. SAME—*the court must place itself in the situation of the tes-
tator.* While the intention of the testator as expressed in the will
must prevail, yet the court is not bound to disregard the circum-
stances under which the will was made but should endeavor to
place itself in the situation of the testator in order to understand
the language in the sense in which it was used.

3. SAME—*when the words "husband" and "wife" will not be
taken strictly in primary sense.* The words "husband" and "wife"
primarily mean only those persons who are actually and lawfully
living together as husband and wife, but the surrounding circum-
stances may extend the meaning of the words to those who are in
the ostensible relation of husband and wife although not legally
married, especially if it appears such was the testator's intention.

APPEAL from the Circuit Court of Lee county; the
Hon. RICHARD S. FARRAND, Judge, presiding.

DIXON & DIXON, and RAY T. LUNEY, for appellant.

H. A. BROOKS, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellant in the circuit court of
Lee county to construe the will of Fred Heavens, deceased.
A demurrer to the bill was sustained and a decree was en-
tered dismissing the bill for want of equity. From that de-
cree this appeal was prayed.

From the allegations of the bill and the exhibits attached
and made a part thereof, it appears that the deceased, Fred

Heavens, executed his last will and testament on January 18, 1916. The will, after directing that his just debts and funeral expenses be paid, provided: "I give, devise and bequeath my watch to my grandson, Fred McDole, my book-case to my daughter, Charlotte McDole. All my other goods and chattels to my wife, Luella Heavens, to be in lieu of dower and widow's award. I also give and devise unto my wife, Luella Heavens, the premises on Boyd street, Dixon, Illinois, 50x150 feet, to have and enjoy for her natural life, but upon her death, or when she re-marries, the said premises I devise to my daughter, Charlotte McDole, if she shall then be living, and if not, to her children then living, in equal parts. Lastly, I direct my executor to sell my vacant lot on North Galena avenue, in Dixon, at public or private sale and out of the proceeds to pay all debts and expenses and mortgage thereon, and the balance of said proceeds I give unto my wife, Luella Heavens." The will named Robert H. Scott, or in case he did not act, Luella Heavens, as executor, and revoked all former wills and codicils made by the testator.

It appears from the allegations of the bill that Luella Thurm was a resident of Dixon, Illinois, in 1907, and in September of that year obtained a decree in the circuit court of Lee county granting her a divorce from her husband; that at that time Heavens was a widower, residing in said city of Dixon; that on December 23, 1907, Luella Thurm and Fred Heavens went to Clinton, Iowa, and then and there were united in marriage; that said marriage ceremony was in violation of the statute of Illinois of 1905 providing that neither party to a divorce shall be re-married within one year from the time of the decree of divorce. From the record and briefs before us it appears that Heavens and Luella Thurm returned to Dixon and lived together as man and wife until Heavens died, and that his last will and testament was admitted to probate in said county February 28, 1916; that the only child surviving him was his daughter,

appellant herein, who at the time of her father's death had two children living, Fred McDole and Olive McDole.

Counsel for appellant contend that it is clear from this record that testator, Fred Heavens, thought that he was legally married to appellee Luella Thurm, and that the presumption must be that he made the gift to her under the erroneous impression that the marriage was valid, and that it cannot be told how he would have drawn the will had he known the marriage was invalid. It is a reasonable presumption, from the record before us, that he knew of her former marriage and her recent divorce at the time when the marriage ceremony between them was performed. There can be no question, under the law, that testator could have left this property to Luella Thurm even conceding that they were not legally married and conceding that he knew the marriage ceremony between them was invalid. The rights of Luella Thurm are to be determined by the intention of the testator, and not as to whether public policy or good morals demand that a divorced person shall not re-marry within a year from the date of the divorce. However unlawful such conduct may be, it is not the duty of courts of equity to deprive persons of their civil rights to punish them for immoral conduct. *Hardy* v. *Smith,* 136 Mass. 328; *Prentice* v. *Achorn,* 2 Paige, 30.

Counsel for appellant argue that the intention of the testator can be found only from reading the will. While the intention of the testator as expressed in the will must prevail, yet the court is not bound to disregard the circumstances under which the will was made but should endeavor to place itself in the situation of the testator, in order to understand the language in the sense in which it was used. (*Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561; *Strickland* v. *Strickland,* 271 id. 614; *Wallace* v. *Foxwell,* 250 id. 616; *Abrahams* v. *Sanders,* 274 id. 452.) It is clear from the admitted facts in this record that the testator lived with Luella Thurm as his wife from the time

when the marriage ceremony was performed, in 1907, until his death, and that during all this time he held her out to the public as his wife. The terms "husband" and "wife" have undoubtedly for their primary meaning only those persons who are actually and lawfully living together as husband and wife, but the surrounding circumstances may extend the meaning of the terms to those who are in the ostensible relation of husband or wife although not legally so, especially if it appears that this was the intention of the testator. (Page on Wills, sec. 511; *Pastene* v. *Bonini*, 166 Mass. 85; *Marks* v. *Marks*, (Can.) 12 Am. & Eng. Ann. Cas. 751, and cases cited in note; 40 Cyc. 1456; *Dicke* v. *Wagner*, 95 Wis. 260.) In view of the relations in which he had lived with Luella Thurm from 1907 until his death, and of the other surrounding circumstances, we think it clearly appears from the wording of the will that the testator intended to leave the interest in the property in question to the woman with whom he was living as his wife,— that is, the appellee Luella Thurm. The reasoning of this court in *Brack* v. *Boyd*, 202 Ill. 440, tends strongly to uphold this conclusion. In that case the will provided, among other things, that "at the death of my said wife it is my will that my said property be vested in my adopted daughter, Mary Jane Ralls, whose name before her said adoption was Mary Jane Singleton." It was argued that the adoption proceedings were invalid. In passing on that question the court said the language "identifies the beneficiary beyond question and is sufficient to vest the estate in remainder in her. This being the case, it will be unnecessary to determine * * * whether there was any defect in the adoption proceedings, as it could not affect the result."

The authorities cited and relied upon by counsel for appellant are not controlling here. Under all the facts and circumstances before us it is obvious that the testator intended to leave the property in question to appellee Luella Thurm. We find nothing in the record to justify the pre-

sumption, even, that the testator would not have left this property to her if he had known that their marriage was invalid.

The decree of the circuit court will be affirmed.

*Decree affirmed.*