JAMES J. WEST

*v.*

ANDREW FITZ.

*Filed at Springfield March 26, 1884.*

1. WILLS—TRUSTS AND TRUSTEES—*whether a mere power is conferred, or an estate.* If a testator by his will simply directs his executor or a trustee to sell real estate, and apply the proceeds to certain specified purposes, such executor or trustee will take a *power* only; whereas, if the devise be *to the executor or trustee* to sell and apply the proceeds, etc., such executor or trustee will take an estate in the land, and not a mere power.

2. SAME—*what estate the trustee may convey.* No one can transfer to another a better or more extensive title to real estate than he himself has. So if an estate limited to a trustee is for life, or years only, he can not himself, nor can any one substituted for him, convey the fee in the premises, or any other greater estate than the one originally limited.

3. SAME—*of the extent of the estate in the trustee, and its duration.* In conveyances or devises to trustees, the use of words of inheritance, by way of limitation, does not necessarily pass the fee. Presumptively it does, but this presumption will be overcome when the exigencies of the trust will be satisfied with a less estate.

Syllabus.

4. Where the trustee is required to see to the application of the rents, he will take an estate in the property to enable him effectually to discharge the duties of the trust; but this does not necessarily confer on him the fee. The quantity of the estate in such case depends upon the exigency of the trust and the terms of the limitation. If required to collect and pay the rents for a definite period of time, or during the life of an individual, he will take an estate for years, or life, as the case may be; but when this duty is of indefinite duration, he will take the fee. So when the gift to the trustee is in general terms, without words of limitation, a direction to him to pay the testator's debts or legacies, or a specific sum in gross, he will, by implication, take the fee as an indemnity in case of payment out of his own funds.

5. This construction was originally adopted to protect the executor or trustee in paying such claims against the estate, and this construction is not affected by the fact that upon a final administration of the effects of the testator the personal estate may prove sufficient, without resort to the land, to liquidate all demands the executor may be required to pay. It is sufficient in such case that the direction to the executor or trustee to pay the claims is absolute, and that he may in some contingency have to resort to the land for his own protection; and whether such contingency exists, or not, is always to be determined from the will itself, and not from subsequent events. And whether such debts or claims are made a charge on the land, does not at all affect the construction of the will in this respect.

6. Where land was devised to a trustee in trust to pay the net rent to the testator's sister, at whose death the same was to form a part of the residue of his estate, all of which residue of his estate, real and personal, was devised to the same trustee in trust, to pay the net income to two other beneficiaries and to the survivor, and after the death of both, to pay certain specific legacies, and the rest to certain relatives named: *Held*, that the duties of the trustee did not cease with the death of the life beneficiaries, but that he was required to pay the legacies, for which purpose it might be necessary to sell realty, and that there being no restrictive words, the power to sell would be referred to the trustee's interest or estate in the land, which would be construed coëxtensive with his duty to sell, if necessary, which requires an estate in fee.

7. Where an estate is given to trustees, the trusts must, *prima facie*, be performed by them by virtue of or out of the estate vested in them, and in order to rebut the presumption of an estate in fee to enable them to sell the property, it must be shown on the face of the will what less estate of definite duration will enable the trustees to serve the trusts out of their interest, and *not by way of power*,—and this not according to subsequent events, but according to events possible at the testator's death.

8. SAME—*as to the mode of conveyance by trustee.* The title to real property in trustees is subject to the same general laws of conveyance and transfer that control and govern it when vested in other persons. The trustee

may convey it by any kind of conveyance operative to pass the title if no trust existed.

9. SAME—*effect of conveyance by trustee—with and without notice to purchaser.* Even when the trustee conveys in direct breach of the trust, the grantee will take the legal title; but if he has notice of the trust, he will, by operation of law, be converted into a trustee himself, and hold the estate subject to the rights of those beneficially interested. So on the death of the trustee, the estate devolves upon the heir, who takes subject to the trust.

10. SAME—*heir of trustee—character of his estate.* Where a trust estate is devolved upon the heir of the trustee, his title is liable to be divested by the appointment of another trustee, when the instrument creating the trust so provides.

11. SAME—*successor of trustee—as to his appointment.* The author of every trust has full power to provide for the appointment of a successor in trust, in case the original trustee or trustees refuse to act, die, remove into a foreign jurisdiction, or are removed by a court of competent jurisdiction. But when the author of the trust makes no such provision, and a vacancy occurs in the trusteeship, a court of general chancery jurisdiction, upon a proper bill filed for that purpose, may make the appointment.

12. SAME—*of the estate vested in a new trustee.* The appointment of a new trustee in the place of one refusing to act, does not, *proprio vigore*, confer the title upon the appointee, unless by the statute of the State where the land lies it is so provided. So a decree in another State, made in pursuance of the laws of such State, appointing a successor to a trustee to whom land in this State is devised, who declines to act, can not have the effect to transfer the title to the lands here to the appointee, and he will have no power to sell and convey them.

13. Where a person in the State of Massachusetts devises all his estate, real and personal, to a trustee in trust for certain purposes, imposing active duties upon the trustee, on his death the title of any land of his in this State will be devolved upon his heirs at law, subject to the trust, and upon acceptance of the trust the title to such land will at once pass from his heirs to the trustee, by virtue of the law of this State; but if he declines to accept the trust, the title will remain in the heirs.

14. WILLS AND DEEDS—*omission of the word "heirs," as affecting the character of the estate.* In this State the omission of the word "heirs," or any other words used in limiting a fee at common law, is wholly without significance, either in a deed or will. Without such words they will be construed to have the force and effect they would have at common law if such words were added.

15. CONFLICT OF LAWS—*as to the title to land—in what jurisdiction to be determined.* The validity, force and effect, and construction, of all records, deeds, contracts or agreements relating to or affecting the title to real property, without regard to where they are made, depend entirely on the law

of the State where the property is situated, and wills form no exception to this rule. The statutes of another State can have no power or influence in passing the title to lands here. All deeds, contracts and records relating to lands here receive whatever force and vitality they have as muniments of title, from the laws of this State, without regard to where they were made.

16. Nor is it competent for a court of another State, by any kind of an order or decree, to divest the title of one person to land in this State and vest it in another. The extent of its power would be to compel a party within its jurisdiction, holding the title in trust, to convey it to his successor in trust.

APPEAL from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

On the 25th of April, 1878, Stephen Hoyt, late of Salem, Essex county, Massachusetts, died testate, and on the 20th of the following month his will was duly proved and admitted to probate in the probate court of said Essex county. The will is as follows:

"I, Stephen Hoyt, of Salem, do make this my last will and testament, this first day of June, in the year 1876.

"*Item first.*—I give and devise to my friend, Thomas H. Frothingham, of Salem, the messuage numbered 26½ and 28 Harbor street, in Salem, and all my household stuff, books, pictures, furniture and plate, in trust, to pay the net rent and income from said real estate to my sister, Ruth H. Denrutt, for life, and to allow her to use said personal property during her life. At the death of my said sister, the estate held in trust under this item shall form a part of the residue of my estate.

"*Item second.*—All the residue of my estate, real and personal, I give, devise and bequeath to said Frothingham, in trust, that he shall pay the net income thereof, from time to time, to Stephen Hoyt Sargent, of Belmont, New Hampshire, and Abbie Hoyt Sanborn, wife of Franklin T. Sanborn, of said Salem; and upon the death of either, the whole income shall be paid to the survivor until his or her death. At the

death of the last survivor, the trustee for the time being shall pay to Franklin T. Sanborn, of Salem, the sum of $1000; and to Sarah E. Hoyt Jenks, of said Salem, Stephen Hoyt Harrington, (son of Eugene C. Harrington,) of St. Louis, Stephen Hoyt Hesse, (son of Herman T. Hesse,) of St. Louis, Joseph F. Tucker, of Chicago, and Bessie Hoyt Tucker, (daughter of Horace Tucker,) of Chicago, each the sum of $500. All the residue and remainder of the trust estate I give and devise, one-quarter part to the heirs at law of Stephen Hoyt Sargent, and one-quarter part each to my nephews and nieces, Moses Sargent, Jr., of Belmont, of the State of New Hampshire, Franklin S. Sargent, of said Belmont, and Mary Sargent Heywood, (wife of H. O. Heywood,) of Lake Village, New Hampshire.

"*Item third.*—I request my executor and trustee to keep the property invested in such securities as savings banks are by the laws of Massachusetts authorized to invest in. I do not wish the real estate on Harbor and Park streets to be sold unless a pressing necessity arises therefor.

"*Item fourth.*—I appoint Geo. Foster Flint, of said Salem, executor of this will.

"*Item fifth.*—I declare that it is my intention by this will to dispose of any estate over which I have a power of disposition in any manner, especially the estate conveyed to said Flint, in trust, by deed recorded in Essex Registry of Deeds, book 940, leaf 254.

"*Item sixth.*—I request that my said trustee and executor may be exempted from giving any surety or sureties on their probate bonds.                          STEPHEN HOYT."

This will, together with an exemplified copy of the record of its admission to probate, is duly recorded in the recorder's office of Cook county, this State.

At the time of Hoyt's death, in addition to the estate, real and personal, owned by him in Massachusetts, he was the

owner in fee of the following real property in this State, namely, lots 5, 6, 7 and 8, in block 1, of Sutton's addition to Chicago, being the same property involved in this suit.

Upon Hoyt's death, Frothingham, the trustee under the will, declined to accept the trust, whereupon George F. Flint was, under the provisions of the statute of Massachusetts, appointed trustee in Frothingham's stead. Flint having subsequently died, Andrew Fitz, the appellee, was appointed in like manner, by the same court, trustee in Flint's stead. Fitz, after his appointment, to-wit, on June 1, 1883, proceeding upon the assumption he had power under the will, and his appointment as trustee, to sell and convey lands belonging to the estate, entered into the following contract with James J. West, the appellant, for the sale of the Chicago property:

"This contract and agreement, made and entered into this first day of June, A. D. 1883, by and between Andrew Fitz, trustee, of Salem, in the county of Essex, and commonwealth of Massachusetts, party of the first part, and James J. West, of Chicago, county of Cook, and State of Illinois, party of the second part:

"Witnesseth, that the said party of the first part, in consideration of one dollar to him in hand paid, the receipt whereof is hereby acknowledged, has this day sold, and hereby covenants and agrees for his successors and assigns to convey in fee simple, by a good and sufficient deed, as trustee, in the usual form, to the party of the second part, his heirs, executors, administrators or assigns, clear of any incumbrances, except such taxes and assessments as may become liens upon such land on and after the first day of May, A. D. 1883, all the following described lots, pieces or parcels of land, to-wit, lots 5, 6, 7 and 8, in block 1, of Sutton's addition to Chicago, being the subdivision of blocks 1, 2 and 3, of the assessor's addition of the east half of the south-east

quarter of section 18, township 39 north, range 14 east, of the third principal meridian, situated in the county of Cook, and State of Illinois.

"The said party of the second part, in consideration of these presents, and of one dollar in hand paid to him by the party of the first part, the receipt whereof is hereby acknowledged, hereby covenants and agrees, for himself, his heirs, executors, administrators or assigns, to pay said party of the first part, as purchase money of the above described land, the sum of $11,850, in the manner following, to-wit: one-third thereof in cash, upon the delivery of the deed above described, to him, one-third in one year after such first payment, and one-third in two years thereafter, the said last two payments to bear interest at six per cent from the date of the delivery of said deed, and to be secured by a mortgage or trust deed from the said James J. West, for the benefit and use of the said Andrew Fitz, trustee, party of the first part.

ANDREW FITZ, <em>Trustee.</em><br>JAMES J. WEST."

After entering into this contract, West, the appellant, becoming apprehensive that a deed from Fitz, as contemplated by the agreement, would not confer upon him a good title to the property, declined to carry out the contract. Thereupon Fitz filed in the circuit court of Cook county the present bill, setting up, in substance, among others, the foregoing facts, and asking that West be compelled to specifically perform the agreement, and averring a readiness and offer to perform it on his part. West filed a general demurrer to the bill, which was overruled by the court. Electing to stand by the demurrer, West declined to answer further, and thereupon the court entered a decree in conformity with the prayer of the bill, to reverse which West brings this appeal.

Mr. E. B. ESHER, and Mr. WILLIAM RITCHIE, for the appellant:

The appellant "can not be compelled to take a doubtful title, which will expose him to the expense and hazard of litigation." *Hoyt* v. *Tuxbury*, 70 Ill. 336.

Fitz, the new trustee, holds not by virtue of the will, but solely by virtue of his appointment by a foreign court. He does not, therefore, even hold the legal title to this land, for any purpose whatever. *City Ins. Co.* v. *Commercial Bank*, 68 Ill. 354; *Williams* v. *Maus*, 6 Watts, 278; *Curtis* v. *Smith*, 6 Blatchf. 549.

It has only been of late that foreign executors or administrators, with the will annexed, have been able to convey title to land in this State, and even then only "in pursuance of due power vested by will,"—not by decree of any foreign court. (Rev. Laws 1879, chap. 30, sec. 34.) But Fitz is neither executor nor administrator, and has not the powers or duties of such. Schouler on Executors, secs. 19, 173, 472, 485; 1 Perry on Trusts, secs. 71, 263, 281.

The terms of this devise do not vest any fee in the trustee, and courts are very averse to enlarging an estate in trustees. 1 Perry on Trusts, sec. 317; 2 Jarman on Wills, *292; *Budden* v. *Harris*, 2 D. & R. 36; *Cooke* v. *Blake*, 1 Exch. 220.

The direction to the trustee to pay certain pecuniary legacies after the death of Sargent, does not necessarily imply a power to sell the realty even at that time. 3 Jarman on Wills, (Rand. & Tal.) 424 *n*, 459 *n*; 2 Perry on Trusts, sec. 570.

The trustees are to receive the gross rents, and after paying out of them the land tax, and any other charges on the estate, to hand over the net rents to the tenant for life. *Parker* v. *Greenwood*, 4 M. & W. 430.

These proper current expenses of the estate must' be paid by the life tenant, even though the whole of the proceeds are thus expended. *Latimer* v. *Moore*, 4 McLean, 110; 2 Perry on Trusts, sec. 554; *Revel* v. *Watkinson*, 1 Ves. Sr. 93.

The interests of the remainder-men can not be touched or affected for that purpose. *Holcombe* v. *Holcombe*, 27 N. J. Eq. 473; *Holmes* v. *Tabor*, 9 Allen, 246.

The objection that the taxes upon this land are consuming it, is no reason why the life tenant may demand its sale. The taxes are a charge upon the income upon the life tenant's interest, and not upon the *corpus* of the trust estate. He should pay all taxes out of his income. 2 Perry on Trusts, sec. 554; *Cavins* v. *Chabert*, 3 Edw. Ch. 312; *Jones* v. *Dawson*, 19 Ala. 679; *Prettyman* v. *Walston*, 34 Ill. 175.

Messrs. PECKHAM & BROWN, for the appellee:

When real estate is left to trustees, with or without words of inheritance, and under any conditions or limitations whatever, they take an estate exactly commensurate with the purposes of the trust. *Kirkland* v. *Cox*, 94 Ill. 400; *White* v. *Glover*, 59 id. 459; Perry on Trusts, sec. 320; 2 Jarman on Wills, *307.

As to when the trustee will take an estate in fee, see 3 id. chap. 33, p. 22; *Howe* v. *Dartmouth*, 7 Ves. 147; *Dimes* v. *Scott*, 4 Russell's Ch. 195; *Fearns* v. *Young*, 9 Ves. 549; *Wilkinson* v. *Duncan*, 23 Beav. 469; *Kilvington* v. *Gray*, 2 Sim. & Stu. 396.

That the successor of the trustee appointed by the court in Massachusetts may execute the trust created by the will, counsel cited section 10 of the chapter relating to Wills, and sections 33 and 34 of the Statute of Conveyances. See, also, *United States* v. *Fox*, 4 Otto, 315; *Chase* v. *Chase*, 2 Allen, 101; *Newton* v. *Bronson*, 13 N. Y. 592.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This seems to be a friendly suit, in which both parties are desirous the decree below shall be affirmed, provided it can be done consistently with legal principles.

28—109 ILL.

But two questions arise on the record, and the arguments of counsel have been confined mainly to them: First, does the will give to the trustee named in it, or any other trustee legally appointed in his stead, power to sell and convey to the purchaser a good title in fee to the premises in controversy; and second, assuming such power is given by the will, does appellee's appointment as successor in trust by the probate court of Essex county, confer on him such power. We will consider these questions in the order stated.

It is specifically averred in the bill "that by the statutes of Massachusetts, as the same existed when said will was executed and probated, and as they now exist, executors and administrators, when authorized by the probate courts of said State, and provided the decedent's personalty will not pay debts and legacies, may sell at public auction, and convey, the realty, subject to dower interest, after due notice, either personally or by publication, to all parties interested. And said probate courts, when deeming it expedient for the trust estate, and after such notice as said courts may prescribe to those interested, may empower a trustee to sell and convey the trust property, real or personal, even when a remainder, or a contingent interest, is limited over to persons not ascertained or not in being; and conveyances so made are by said statutes declared to conclude the rights of all who are, or may become, interested, whether in being or not, and all to whom a remainder or a contingent interest may be limited. And said probate courts may empower executors, administrators and trustees to release any vested, contingent or possible rights or interests belonging to the persons or estates represented by them, whenever the court deems it expedient for such persons or estates. And said probate courts may, in case of the death or resignation of an original trustee, appoint a successor, with all the rights of such original trustee."

While it may savor somewhat of technical refinement and astute discrimination, it is clearly settled by the general current of English and American authority, that if a testator, by his will, simply directs his executor, or a trustee, to sell real estate and apply the proceeds to certain specified purposes, such executor or trustee will take a *power* only; whereas, if the devise be *to the executor or trustee* to sell and apply the proceeds, etc., such executor or trustee will take an estate in the land, and not a mere power. (2 Washburn on Real Prop. 661.) Testing the case in hand by this rule, there is no room for doubt or controversy. The language of the will in this respect could not be clearer or more explicit. The commencement of the first item is: "I give and devise *to my friend, Thomas H. Frothingham,*" etc., specifying certain real and personal property in Salem, where the testator resided. In the second item the words are: "All the residue of my estate, real and personal, I give, devise and bequeath *to said Frothingham,* in trust," etc. From the language here used, it is manifest the will, by its express terms, gives to the trustee the entire estate of the testator, both real and personal, upon the trusts therein specified, and to put any other construction on the will would be doing gross violence to its terms.

It being clear, then, the trustee is given an estate in the land, and not a mere power over it, the question arises, what is the extent of this interest or estate? Is it one for years, for life, or in fee? If for life, or years, only, it is manifest the question now under consideration must be answered in the negative, for it is a fundamental maxim of the law governing the conveyance and alienation of real property, that no one can transfer to another a better or more extensive title than he has himself,—or, in other words, it is clear, if the estate limited to the trustee is for life, or years, only, he could not himself, nor could any one substituted for him, convey the fee in the premises, or any other greater estate than the one originally limited.

In determining whether the trustee takes a fee in the real estate of the testator, a number of considerations are to be looked to, viz: the terms of the limitation itself, our statute relating to conveyances, and the nature of the duties the trustee is required to perform with respect to the property. If we look to the language of the limitation alone, without regard to our statute, or the character of the trusts under the will, we would say the trustee, *prima facie*, takes a mere life estate. This conclusion, of course, is based upon the omission of the word "heirs," in the limitation to the trustee. On the other hand, if the word "heirs" had been used, the trustee would, *prima facie*, have taken the fee. But as will be abundantly shown further on, the use or the omission of the word "heirs," in devises to trustees, is anything but conclusive on the subject, even by the common law. Its use or omission in any case only gives rise to a presumption which may be entirely overcome by other provisions of the instrument, and in this State the omission of the word, or any other words used in limiting a fee at common law, is wholly without significance, either in a deed or will. By virtue of the 13th section of our Conveyance act, every deed or will relating to lands in this State, although it does not contain the word "heirs," or other words heretofore used to limit a fee, must be construed and given the same force and effect that would be given to it by the common law if the word "heirs," or other words used for a like purpose, were added. In this connection it is proper to advert to the well recognized principle that the validity, force, effect and construction of all records, deeds, contracts, or agreements relating to or affecting the title of real property, without regard to where they were made, depend entirely on the law of the State where the property is situated, and, it is hardly necessary to add, wills form no exception to this general principle. 1 Jarman on Wills, 1; *Richards* v. *Miller*, 62 Ill. 417.

Applying the general principles to which we have called attention, and the provisions of our statute, to the will before us, it must, though made in another State, receive the same construction as if the limitation had been to the trustee and his heirs, which of course would, *prima facie,* give him the fee.   We say *prima facie,* for as already seen, in conveyances to trustees the use of words of inheritance by way of limitation does not necessarily pass the fee.   Presumptively it does, but this presumption will be overcome where the exigencies of the trust will be satisfied with a less estate,—and this brings us to the inquiry whether an estate less than a fee will enable the trustee to perform the duties imposed upon him by the will.   First, let us see what acts or duties to be performed by a trustee require the legal estate to be in him, for it is manifest there are certain duties and powers the performance of which requires an estate in the trustee.   Such, for instance, is the case where the application of rents is given to the trustee, for no one could efficiently exercise such a right or power without having the control of the possession, which is, *per se,* an interest or an estate in land.   (3 Jarman on Wills, 55, *et seq.*)   Where, however, the trustee is not required to collect or pay over the rents, or perform any other duty respecting them, as, where the estate is given to him to the intent another shall have or enjoy the rents and profits, the latter will take the legal estate under the Statute of Uses, the trustee, in such case, being a mere devisee to uses. But the giving of a trustee the application of the rents does not necessarily confer on him the fee.   The quantity of the estate in each case will depend upon the exigencies of the trust and the terms of the limitation.   If required to collect and pay the rents for a definite period of time, or during the life of an individual, he will take an estate for years, or life, as the case may be ; but where this duty is of indefinite duration he will take the fee.   So even where the gift to the trustee is in general terms, without words of limitation, a direction

to him to pay the testator's debts, or legacies, or a specific sum in gross, he will, by implication or intendment of law, take the fee, otherwise he would have no indemnity in case of payment out of his own funds, and in the absence of any other fund out of which to make such payment he would be altogether without means to meet the requirements of the will. *Abbott* v. *Essex*, 18 How. 202; *Doe on the demise of Willey et al.* v. *Holmes*, 8 Term Rep. 1.

The language of the will in this last case is: "I give and bequeath my freehold house, with the appurtenances, etc., * * * and all the furniture thereto belonging, to Elizabeth Gibson, whom I make executrix of this my last will, *she paying all my just debts, and funeral expenses, and legacies* before mentioned, twelve months after my death. I likewise leave to the said E. Gibson all the rest and residue of my personal estate," etc., and it was held the executrix, Elizabeth Gibson, took the fee in the land. It is to be specially noted in this case, the fact the executrix was given all the residue of the personal estate made no difference in the result. It was sufficient that the executrix might, under some contingency, be compelled to resort to the realty to meet the requirements of the will. This construction was originally adopted to protect the executor or trustee in paying such claims against the estate, and it is well settled the construction in question is not at all affected by the fact that upon a final administration of the effects of the testator the personal estate may prove sufficient, without resorting to the land, to liquidate all demands which the executor may be required under the will to pay. It is sufficient in such case the direction to the executor or trustee to pay the claims is absolute, and that he may, in some contingency, have to resort to the land for his own protection; and whether such contingency exists or not is always to be determined from the will itself, and not from subsequent events. (3 Jarman on Wills, 23–26.) And whether such debts or claims are made a charge on the

land does not at all affect the construction of the will in this respect. Ibid. 24.

In the present case appellant concedes it *may* be necessary to sell part of the realty to pay legacies, and that in such event the trustee will have power to do so. If by this, counsel mean to say the trustee, in the event suggested, would, by virtue of the estate vested in him under the will, have the power to sell to pay legacies, that would, in effect, be yielding the whole question, for the power to sell and convey land absolutely, is an incident of a fee simple estate, only. But if by this it is intended to assert, in the event a sale of a part of the realty should become necessary to pay legacies, the trustee would be able to do so by virtue of a mere power under the will, independently of the estate conferred on him, we confidently assert no authority can be found for the position, and certainly none has been cited. We do not wish by this to be understood as saying that a trustee could not be given a life or other less estate, only, and yet be clothed with a power to sell upon a given contingency, or that instances of this kind can not be found in the reported cases; but what we intended to say, and do say, is, no case can be found adopting such a construction where the limitations of the will are like the present. The construction suggested is never adopted, except where the estate of the trustee is expressly, or by necessary implication, limited to an estate for life, or for a term of years. In this case there is no foundation for such a claim, for in addition to the fact the will, by its very terms, is, under our statute, *prima facie* a gift in fee, it is manifest on the face of the instrument that the duties of the trustee do not cease upon the deaths of Stephen Hoyt Sargent and Abbie Hoyt Sanborn, the life beneficiaries. After their decease he is required to pay certain specified legacies, and for this purpose it is conceded it may be necessary to sell a part of the realty. In such cases, where there are no restrictive words, as is the case here, the settled construction

is, the power to sell will be referred to the trustee's interest or estate in the land, and for that purpose his estate will be construed as coëxtensive with the duty to sell, should it become necessary in carrying into effect the objects of the trust, which, of course, would require a fee. Where the will, as it does here, *prima facie* gives to the trustee an estate in fee, the question is not whether the estate given shall be enlarged to meet the exigencies of the trust, as it is in most of the cases where there has been any serious doubt, but the question is, shall this *prima facie* fee simple estate be cut down to a less estate, when it is conceded the trustee may have duties to perform in the execution of the trust that no one can lawfully perform except the owner in fee, or some one acting by his express authority.

Jarman, in his valuable work on Wills, (volume 3, page 67,) after reviewing some of the cases relating to this subject, says: "The general rule now acted upon is, that where an estate is given to trustees, all the trusts must, *prima facie*, be performed by them by virtue or out of the estate vested in them; * * * for it would be a strange and artificial construction to hold, first, that the natural meaning of the words should be cut down because they would give an estate more extensive than the trust required, and then, when the trust does require the whole fee simple, that it must be supplied by way of power, defeating the estate of the subsequent devisees, and not out of the interest of the trustees. To rebut this *prima facie* construction, it must be shown on the face of the will what less *estate of definite* duration will enable the trustee to serve the trusts out of their interest, *and not by way of power,*—and this not according to subsequent events, but according to events possible at the testator's death."

Had the will in this case simply required the trustees to pay over the net income of the estate to Mr. Sargent and Mrs. Sanborn during their lives, and his duties had terminated with their decease, it might well be contended that the

*prima facie* fee was cut down to a life estate, on the ground so extensive an estate as the fee was not demanded by the exigencies of the trust. But such is not the case. The case of *Goodtitle* v. *Maddern*, 4 East, 496, is a strong case in support of the view the trustee in this case takes the fee. In that case, after certain specific bequests, the testator gave the residue of his estate, both real and personal, to his wife, directing her to sell the personal property to pay his debts, and that if it should not be sufficient for that purpose, then to sell certain real property. The question in the case was, whether upon the death of the testator, his wife, who survived him, took under the will a fee in the realty, and it was held she did, notwithstanding it was conceded, on the trial, the personal property was more than sufficient to pay the testator's debts. Numerous other authorities might be cited to the same effect, but it is unnecessary to do so.

We think it clear, on reason and authority, the will in this case gives the fee to the trustee. There are other reasons apparent on the face of the will, not adverted to, which we think support the construction we place upon it, but will not stop to point them out, as the discussion on this branch of the case has already extended further than desirable.

With respect to the remaining question but little need be said. A recurrence to a few general principles ought to satisfactorily solve it. And first, it is to be observed the title to real property in trustees is subject to the same general laws of conveyance and transfer that control and govern it when vested in other persons. It passes by the same instrumentalities that it does in other cases. The trustee may convey it by any kind of a conveyance that would be operative to pass the title if no trust existed, even where such conveyance would be a direct breach of the trust, in which case, if the grantee takes with notice of the trust, he will, by operation of law, be converted into a trustee himself, and consequently will hold the estate subject to the rights of those beneficially

interested in it.   If the fee is in the trustee, and he die with-
out making any disposition of it, the estate devolves upon
his heirs precisely as in other cases, in which event the heirs
of course take the title subject to the trust.   There is this
diversity, however, in cases where the heirs take the estate
absolutely, and where they take it clothed with a trust:   In
the latter case the title of the heirs is subject to be divested
by the appointment of another trustee, where the instrument
creating the trust so provides.   The author of every trust
has full power to provide for the appointment of a successor
or successors in trust, in case the original trustee or trustees
refuse to act, die, remove into a foreign jurisdiction, or are
removed by a court of competent jurisdiction.   But where
the author of the trust makes no provision, as is the case
here, for the appointment of a new trustee, in any of the
contingencies mentioned, and a vacancy occurs in the trustee-
ship, as it has in the present case, a court of general chancery
jurisdiction, upon a proper bill filed for that purpose, may
make the appointment.   (1 Perry on Trusts, sec. 282; *Golder
et al.* v. *Bressler,* 105 Ill. 419.)   But such appointment does
not, *proprio vigore,* confer the title upon the appointee, unless,
by the statute of the State where the land lies, it is so pro-
vided.   As the title of the trustee is not complete until he is
clothed with the legal title, the decree, where the appointment
is made by a court of chancery, usually directs the proper
conveyance or conveyances to be made for that purpose.
(Ibid. 284.)   Conceding, for the purposes of the argument,
a court of chancery or other court exercising like powers in
a foreign State may entertain a bill or petition to appoint a
trustee to hold lands in this State, and compel those having
the legal title to convey it to the appointee, about which we
express no opinion, it is nevertheless clear no decree could
be entered there in such proceeding that would, of its own
inherent force, transfer the title to the appointee, for it is
well settled this can only be done in the jurisdiction where

the land lies, and where there is a statute expressly authorizing it.    Ibid. 72.

Upon the death of Stephen Hoyt, the testator, the title to this land devolved upon his heirs at law, subject to the trust. Had Frothingham, the trustee, accepted the trust, upon such acceptance the title to the land, by virtue of the laws of this State,—not of Massachusetts,—would at once have passed from Hoyt's heirs to the trustee, and would have related back to the time of Hoyt's death; but as the latter declined to accept the trust, the title continued in the heirs, and we are of opinion a fair construction of the various allegations of the bill in the case shows that the title is still in the heirs.    At any rate, it is not averred in the bill they have conveyed it to appellee, or any one through whom he claims, and if such were the fact, we must assume it would have been so averred. The claim in the bill is, that by virtue of the appointment of appellant by the Massachusetts court, and by operation of the statutes of that State, he became seized in fee of the land in controversy; but it is clear he could not acquire title to lands here, in that manner.    The statutes of Massachusetts can have no power or influence in passing the title to lands here. All deeds, contracts and records relating to lands here, receive whatever force and vitality they have as muniments of title, from the laws of this State, without regard to where they were made.    Take an ordinary deed for land here, executed in Massachusetts, in conformity with the laws of that State.    Such deed, of course, is valid and operative as a conveyance in this State,—not, however, because the laws of Massachusetts have any force here, but simply because our own legislature has declared that a deed thus made shall be valid and effective here.

We think it clear, from this record, appellee has failed to show he is seized in fee of the lands in controversy, as charged in the bill, and consequently he is not in a condition to make such a title to the appellant.    Nor do we think it was competent for the Massachusetts court, by any kind of an

order or decree it might enter, to clothe appellee with power to convey the land. That court could only act *in personam.* The outside limit of its powers would have been to have compelled those having the legal title to convey it to the trustee, after his appointment. But it is not pretended anything of this kind was done, and it is manifest there is nothing in our laws authorizing the transfer of the title to lands here in the manner claimed. This being so, it follows the demurrer to the bill should have been sustained, and it was error not to do so.

The decree of the circuit court is reversed, and the cause remanded, with directions to that court to sustain the demurrer.

*Decree reversed.*

Mr. JUSTICE WALKER: I hold the will confers power on the first trustee to sell the property, but his successor has no such power.