TELFAIR B. PEET

*v.*

JANE CREIGHTON PEET *et al.*

*Opinion filed October 23, 1907.*

1. WILLS—*as respects land in Illinois foreign will must be construed by the laws of Illinois.* All instruments affecting the title to real estate situated in Illinois must be governed, as to their execution, construction and legal sufficiency, exclusively by the laws of Illinois, and not by the laws of the State wherein the maker may reside at the time the instrument is executed.

2. SAME—*local law governs in ascertaining testator's intention.* In construing a foreign will affecting real estate in Illinois the laws of Illinois govern in ascertaining the testator's intention, as well as in determining what is the effect of the provisions of the will.

3. SAME—*extent to which proof of foreign law or usages is admissible.* In construing a foreign will affecting land in Illinois, proof of the laws or usages of the foreign State, with which the testator is shown or presumed to be familiar, may be received, not to establish a rule of law binding upon the court of the forum, but to enable that court to correctly construe the language of the will in the sense in which it was used.

4. SAME—*testator's statements cannot be received to prove intention.* Statements of the testator, whether made before or after the will was executed, cannot be received to prove what was intended by the written words of the will; but error in admitting such statements will not reverse, if, upon the whole record, a correct conclusion has been reached and there is competent evidence in the record to sustain the decree.

5. SAME—*testator's intention to disinherit after-born child need not be expressed in words.* Under section 10 of the Statute of Descent, which makes provision for after-born children of the testator not provided for in the will "unless it shall appear by such will that it was the intention of the testator to disinherit such child," it is not essential that such intention shall be declared in express terms, but the same may appear from a consideration of proven facts and circumstances surrounding the testator when the will was made. (*Hawhe* v. *C. & W. I. R. R. Co.* 165 Ill. 561, followed.)

6. SAME—*when the testator's intention to disinherit after-born child sufficiently appears by the will.* A will devising all of the testator's property to his wife sufficiently manifests the testator's intention to disinherit a child born one and one-half years after the said will was made, where it is shown that at the time the will was made the testator had one child living, of whom he was fond; that the testator and his wife lived happily together and were fond of both children who were living at the testator's death, and that the testator had confidence in his wife's integrity and business ability.

CARTWRIGHT, FARMER and DUNN, JJ., dissenting.

APPEAL from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

This is a bill for partition filed in the circuit court of Cook county by Henry J. Peet, who claims to be the owner of an undivided half of the premises sought to be partitioned. The other half interest was owned by William Creighton Peet, who died at his home in the city of New York July 23, 1906. William Creighton Peet left a widow, Jane Creighton Peet, and two sons, Creighton Peet and Telfair B. Peet, aged about seven and two and a half years, respectively, at the time of their father's death. On May 28, 1902, William Creighton Peet made and executed a last will and testament, which, omitting the formal parts thereof, is as follows: "I give, devise and bequeath all my property, wherever situated, to my wife, Jane Creighton Peet." The youngest son of the testator, Telfair B. Peet, was born about one and one-half years after the execution of the will. The other son, Creighton Peet, was about three years old at the date of the will. Jane Creighton Peet claims the en-

tire half interest in the testator's land in question, while the guardian *ad litem* of Telfair B. Peet claims that the devise under the will should be abated to raise for the after-born child such a portion of the testator's estate as he would have been entitled to receive if the testator had died intestate.

On the hearing before the master evidence was received, over the objection of Telfair B. Peet, that the testator resided with his family in the city of New York prior to his death; that he was very devoted to his family, and especially to Creighton, the older son, who is described as a very lovable and affectionate child, and that the father's constant admiration of him was very noticeable; that the testator and his wife lived very happily together and were both very devoted to their children. It was proven that the testator had implicit confidence in the integrity and business ability of his wife. It was also testified to that the testator on one occasion expressed the belief that a man ought to leave all of his property to his wife and that he did not believe in leaving a young man a lot of money; that it was not fair to him; that it did not give him a chance to bring out what was in him,—his own ingenuity; that after the execution of the will, and a few months after the birth of Telfair, the testator said that he had made his will and left everything to his wife, as he had always intended. It was further shown that substantially all of the real estate belonging to the testator, including that involved in this suit, was heavily encumbered at the time the will was executed. Complainant, Henry J. Peet, the owner of one-half of the real estate involved in this proceeding, testified that this property was encumbered, as well as all of the residue of his brother's estate, for about one-third to one-half of its value, and that, in his opinion, if the testator's real estate was held until the youngest son became of age it would mean bankruptcy to the estate.

The following from Heydecker's Revised Statutes of New York was received in evidence: "Whenever a testator

shall have a child born after the making of a last will, either in the lifetime or after the death of such testator, and shall die leaving such child, so after-born, unprovided for by any settlement and neither provided for nor in any way mentioned in such will, every such child shall succeed to the same portion of such parent's real and personal estate as would have descended or been distributed to such child if such parent had died intestate, and shall be entitled to recover the same portion from the devisees and legatees, in proportion to and out of the parts devised and bequeathed to them by such will."

George J. Peet, a brother of the testator and a lawyer, testifies that he was the legal adviser of the testator and that he prepared and attended to the execution of the will. He testifies that he was the sole legal adviser of the testator, and that he never spoke to his brother regarding the statutory provisions in Illinois and New York, to the effect that where a child is born after the testator has made his will such child shall be given a share of the testator's estate under certain circumstances, and the witness expresses a belief that the testator had no knowledge as to the existence of such statutes.

The circuit court found that Jane Creighton Peet was the owner in fee, under the will, of the real estate of which the testator died seized and that Telfair B. Peet had no interest whatever in the premises. Telfair B. Peet, by his guardian *ad litem,* appeals to this court, and insists that the court erred in refusing to hold that Telfair B. Peet was the owner of an undivided one-fourth interest in the premises described in the bill.

DeForest M. Neice, for appellant:

The domicile of the testator at the time he made his will, at the time of the birth of the defendant and at said testator's death having been in the State of New York, the language in said will contained must be presumed to have

been used by the testator with reference to its meaning in the place that was his domicile. The question whether or not the testator, by his said will, intended to disinherit his after-born child must be determined by the law of the testator's domicile. Minor on Conflict of Laws, sec. 145; 22 Am. & Eng. Ency. of Law, (2d ed.) 1367; Story on Conflict of Laws, secs. 479*a*, 479*h*; *Keith* v. *Eaton,* 51 Pac. Rep. 271; *Harrison* v. *Nixon,* 9 Pet. 483; *Ford* v. *Ford,* 80 Mich. 42; *Trotter* v. *Trotter,* 3 W. & S. 407; *Maxwell* v. *Hyslop,* L. R. 4 Eq. Cas. 407.

The rule as to ascertaining the testator's intention by the laws of his domicile does not in any way conflict with the settled doctrine that the *lex rei sitæ* governs the devolution of real property. *Keith* v. *Eaton,* 51 Pac. Rep. 271.

The statute of the State of New York relating to afterborn children became, by implication, a part of the will itself, just as much as though it had been embodied in the will. *Freund* v. *Freund,* 218 Ill. 189; *Carpenter* v. *Browning,* 98 id. 285.

Even though we consider the intention of the testator undetermined by the testator's domicile as to lands in the State of Illinois, still, under section 10 of chapter 39 of our statutes, the infant defendant is entitled to receive out of the estate of his father a portion of said estate equal to that which he would have received had his father died intestate. *Lurie* v. *Radnitzer,* 166 Ill. 609; *Carpenter* v. *Snow,* 117 Mich. 489; *Sandon* v. *Sandon,* 123 Wis. 603; *Wasserman* v. *Railroad Co.* 22 Fed. Rep. 873; *Bank* v. *White,* 159 Ill. 136; *Flanagan* v. *Howard,* 200 id. 396.

Under section 10 no evidence outside of the will itself is admissible to prove or disprove the testator's intention as to the disinheriting of any child or children born to the testator after the making of the will, especially where the will itself contains no doubtful language. *Lurie* v. *Radnitzer,* 166 Ill. 609; *Carpenter* v. *Snow,* 117 Mich. 489; *Sandon* v. *Sandon,* 123 Wis. 603; *Wasserman* v. *Railroad Co.* 22 Fed.

Rep. 873; *Coulan* v. *Doull,* 133 U. S. 216; *Estate of Garraud,* 35 Cal. 336; *Marston* v. *Roe,* 8 Ad. & El. 14;   Page on Wills, sec. 294.

H. S. & F. S. OSBORNE, (R. F. PETTIBONE, and HAROLD S. OSBORNE, of counsel,) for appellees:

The question at issue is to be determined by the laws of the State of Illinois, and the sole bearing of the New York statutes is as an evidentiary fact, only admissible, if at all, as tending to furnish some presumption and subject to rebuttal by other facts and circumstances. *Keith* v. *Eaton,* 51 Pac. Rep. 271; *Applegate* v. *Smith,* 31 Mo. 166; *Jennings* v. *Jennings,* 21 Ohio St. 56; *McCartney* v. *Osburn,* 118 Ill. 403.

The term "will," as used in section 10 of chapter 39 of our statutes, has the usual legal signification of that term, and means, not the written paper, but the intention or will of the testator as expressed in the instrument.   1 Redfield on Wills, (3d ed.) chap. 2, sec. 1; *Hawhe* v. *Railroad Co.* 165 Ill. 561; *Osborn* v. *Bank,* 116 id. 130.

The surrounding facts and circumstances are admissible, not to contradict, modify or in any manner change the will, but for the purpose of putting the court in the place of the testator when he executed the will, and to enable it to determine what is the true intention of the testator as expressed in the instrument.   Wigram on Wills, (2d Am. ed.) prop. 5, p. 142; *Gilmer* v. *Stone,* 120 U. S. 586; *Hawhe* v. *Railroad Co.* 165 Ill. 561; Schouler on Wills, sec. 579; *Lurie* v. *Radnitzer,* 166 Ill. 609.

Where the purpose of a testator would be manifestly defeated by one construction of his will, the court will not adopt that construction if any other is possible.   2 Redfield on Wills, 235; *Hayward* v. *Loper,* 147 Ill. 41; *Hawhe* v. *Railroad Co.* 165 id. 561.

It was not the intention of the testator to disinherit his son Creighton as an individual and leave the law to give to

subsequently born children, if any, their share of the estate, but it was his intention to disinherit his issue as a class, whenever born, and entrust the family interests wholly and exclusively to his wife. *Hawhe* v. *Railroad Co.* 165 Ill. 561.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Section 10 of chapter 39, Hurd's Statutes of 1905, provides as follows: "If, after making a last will and testament, a child shall be born to any testator, and no provision be made in such will for such child, the will shall not on that account be revoked; but unless it shall appear by such will that it was the intention of the testator to disinherit such child, the devises and legacies by such will granted and given, shall be abated in equal proportions to raise a portion for such child equal to that which such child would have been entitled to receive out of the estate of such testator if he had died intestate, and a marriage shall be deemed a revocation of a prior will."

The sole question for determination in this case is, whether the devise under the will should be abated to raise a portion for appellant equal to that which he would have been entitled to receive had the testator died intestate.

Appellant's contention may be reduced to two principal propositions: First, whether the testator intended by his will to disinherit his after-born child must be determined by the laws of the State of New York, where the testator was domiciled; second, under section 10 of chapter 39 of our statutes, above set out, no evidence outside of the will itself is admissible, and under said section and the words of the will appellant is entitled to a one-fourth interest in the real estate involved. If either of the foregoing propositions is sustained, then that the decree below is erroneous would seem to follow as a necessary conclusion. We will consider these two propositions in the order in which they are stated.

*First*—Appellant concedes that the devolution of real property is governed by the law of the place where the real

estate is situated, but he insists that in determining the testator's intention the law of New York must govern. To say that the intention of the testator must be determined under the laws of his domicile is equivalent to saying that the construction of a will is governed by the laws of the testator's domicile. There is no perceivable difference between the construction of a will and determining the intention of the testator, unless it may be said that ascertaining the intention of the testator is the object to be sought and construction is the means of attaining that object. Whatever may be the rule with respect to movable property, we regard the law as firmly established in this State that all instruments affecting the title of real estate situated in this State must be governed, as to their execution, construction and legal sufficiency, exclusively by the laws of Illinois, and not by the laws of a foreign country or sister State wherein the maker may reside at the time of their execution.

In Redfield on Wills (vol. 1, p. 398,) it is said: "It is scarcely necessary to state, that in regard to real property the mode of execution, the construction and the validity of a will must be governed exclusively by the *lex rei sitæ.* The descent of real estate, as well as the devise of it, is governed exclusively by the law of the place where the property is situated. It would not comport with the dignity, the independence or the security of any independent State or nation that these incidents should be liable to be affected, in any manner, by the legislation or the decisions of the courts of any State or nation besides itself. This has been a universally recognized rule of the English law from the earliest time, and is so unquestionable that we should scarcely feel justified in occupying much space in reviewing the cases."

In *City Ins. Co.* v. *Commercial Bank,* 68 Ill. 348, this court, on page 353, said: "Mr. Story concedes that the courts of England and the United States have arrived at opposite conclusions as to the effect of statutable transfers of movable property under the bankrupt or insolvent laws

of the debtor's domicile, but he adds: 'All the authorities in both countries, so far as they go, recognize the principle, to its fullest extent, that real estate or immovable property is exclusively subject to the laws of the government within whose territory it is situated. Indeed, so firmly is this principle established, that in cases of bankruptcy the real estate of the bankrupt situated in foreign countries is universally admitted not to pass under the assignment, although, as we have seen, there is great diversity of opinion as to movables.'—Story on Conflict of Laws, sec. 428." See, also, *West* v. *Fitz*, 109 Ill. 425.

In *Wunderle* v. *Wunderle*, 144 Ill. 40, this court, on page 53, said: "It is a general rule of the common law that the title to real property must be acquired and passed according to the *lex rei sitæ*. This rule not only applies to alienations and acquisitions made by the acts of the parties, but also to estates and rights acquired by operation of law. The descent and heirship of real estate are governed by the law of the country where it is located. (Story on Conflict of Laws, secs. 424, 448, 483, 509; *Stoltz* v. *Doering*, 112 Ill. 234.) This principle, originally applicable as between countries entirely foreign to each other, also prevails as among the States of the American Union."

In *Harrison* v. *Weatherby*, 180 Ill. 418, this court had before it a will executed in the State of North Carolina by Richard Smith. There were no witnesses to the will, and apparently the laws of North Carolina recognized the validity of holographic wills without attestation. The will, on its face, showed that it had been written by the testator in person, and attestation by witnesses was dispensed with because the law of that State recognized the validity of a will proven to be in the handwriting of the testator. The will affected the title to a large body of real estate in Illinois. In the course of the opinion in that case, on page 435, the following rule was laid down by this court: "The validity and construction, as well as the force and effect, of all in-

struments affecting the title to land depend upon the law of
the State where the land is situated. This rule includes
wills, as well as deeds, contracts or agreements; and it in-
cludes the form and mode of the execution of the will as
well as the power of the testator to make the devise or dis-
position of property contained in the will.—*West* v. *Fitz,*
109 Ill. 425; *McCartney* v. *Osburn,* 118 id. 403; *City Ins.
Co. of Providence* v. *Commercial Bank of Bristol,* 68 id.
348; *Wunderle* v. *Wunderle,* 144 id. 40; *Ford* v. *Ford,* 70
Wis. 44; *Robertson* v. *Pickrell,* 109 U. S. 608; *McCormick*
v. *Sullivant,* 10 Wheat. 192; *Darby* v. *Mayer,* 10 id. 465."

It will be noted that in the cases above cited the *con-
struction* of instruments affecting real estate, as well as their
force and validity, is governed exclusively by the *lex rei
sitæ.* Judicial construction is the process of applying natu-
ral methods of finding and weighing evidence to discover
the fact of intention. To say that the intention of a maker
of an instrument is to be determined by one law or set of
rules and that its construction is to be by another and dif-
ferent law or set of rules is contradictory and absurd.

The only authorities in this State that appellant cites in
support of his contention are *Carpenter* v. *Browning,* 98 Ill.
282, and *Freund* v. *Freund,* 218 id. 189. Neither of these
cases is in point. In the *Browning case* the question pre-
sented was as to the effect of the Married Woman's act of
1861 upon a devise in trust for the use of a married woman,
made prior to the act of 1861. In that case, after the act
of 1861 was passed the usee sought to compel the execution
of the trust by compelling a conveyance to be made by the
trustee to the beneficiary. It was held that the Married
Woman's act of 1861 did not execute the trust nor entitle
the beneficiary to a conveyance where the will imposed ac-
tive duties on the trustee. In disposing of that case the
court held that the state of the law at the time of the exe-
cution of the will might be referred to for the purpose of
arriving at the intention of the testator, and that the rights

of the parties were to be determined under the law as it existed at the time of the testator's death. The case lends no support to appellant's contention that a law of a foreign country or sister State should govern this court in the construction to be given to the will now under consideration. *Freund* v. *Freund* involved the right of the insured, under a New York life insurance policy, to change the beneficiary without the consent of the company properly endorsed on the policy. Under the statute of New York a beneficiary could not be changed except by written endorsement upon the policy by the company. It was held that the assured was bound by the statute of New York. That case has no application whatever to the facts of the case in hand. The case does not relate to real estate or other property located in this State. The contract of insurance was executed in the State of New York, and, so far as the case shows, was to be wholly performed there, and, of course, was made and accepted in view of the statute relating to a change of beneficiaries.

The authorities relied on by appellant outside this State, so far as we have been able to examine them, seem to be referable rather to the doctrine, recognized in this State as well as in those jurisdictions wherein the cases are found, that in determining the true intent and meaning of a will the court will have recourse to the circumstances of the testator and of his family and affairs, and of other facts which it can be shown will in any way aid the court in the right interpretation of a testator's will. (Proposition 5 of Wigram's Rules, p. 142, Wigram on Wills.) Under this rule we have no doubt that if a will executed in a foreign country contains words or phrases which have a local or domiciliary meaning different from the meaning of the same words or phrases in this State, with which the testator is shown or presumed to have been acquainted, extrinsic evidence of such domiciliary meaning may be heard to enable the court to read the will with the same light under which

it was written. In this view it can make no difference how such domiciliary meaning was established. It may be by the usage or custom of merchants or traders in the place where the instrument was executed, or may be a meaning established by statute or judicial decision. But however established, the usage or law, and the meaning of the words thereunder, are proven, not to establish a rule of law binding on the court charged with the proper interpretation of the will, but simply as a fact or circumstance proven to enable the court to arrive at a correct construction under the laws of the forum.

It is a well established rule that parol evidence may be received of a usage or custom to explain the meaning of terms used in a written contract that would otherwise be ambiguous. Indeed, under the more recent authorities the rule seems to be established that such evidence is admissible to explain the meaning of, but not to contradict, the instrument, even though no ambiguity exists on the face of the instrument. (1 Elliott on Evidence, sec. 607, and cases there cited; see, also, 2 Page on Contracts, sec. 1108, and citations there made.) As applied to the construction of instruments affecting the title to real estate, the above rule furnishes the only ground upon which a court of this State is warranted in hearing evidence as to the law of the State or government of the maker's domicile, and when, under these limitations and restrictions, it is heard, it is only to be considered as an extrinsic fact brought forward by extrinsic evidence to enable the court to properly interpret the true intention of the testator. While the language selected by courts and law writers in applying this rule has not always been entirely clear, yet when the authorities are carefully considered and analyzed in the light of the facts involved, we do not believe a well considered case can be found which holds that the law of the domicile of the maker of an instrument affecting the title of real estate, respecting the construction thereof, is binding on a court where the

real estate is situated, when called on to construe and enforce such instrument.

Our conclusion as to appellant's first proposition is that it cannot be sustained, and that the will is to be construed,— that is, the intention of the testator must be determined,— by the law of this State.

*Second*—Appellant's second proposition is, that under section 10 of chapter 39 of our statutes no evidence outside the will itself is admissible, and that under said section and the words of the will appellant is entitled to a one-fourth interest in the real estate involved. In so far as the court below permitted parol evidence of the testator's statements, either before or after the making of the will, the ruling is clearly erroneous. The statements of a testator can not be received to prove what is intended by the written words of the will. Where an issue is raised as to the testamentary capacity of the testator, then what he says and what he does, if not too remote from the time when the will was executed, becomes original evidence and is admissible under the well established rules of evidence. The erroneous ruling of the court on the admission or exclusion of evidence will not require us to reverse the decree if upon the whole record a proper conclusion has been reached and there is competent evidence in the record sufficient to support the decree.

Appellant insists that section 10 of chapter 39 *ex vi termini* precludes the court from looking to anything except the words of the will itself. This argument is based upon the phrase, "unless it shall appear *by such will* that it was the intention of the testator to disinherit such child," his contention being that the intention of the testator must be expressed in words in the will, and that it is not sufficient that such intention is disclosed by the application of the usual rules of interpretation, especially if, in the application of those rules, parol evidence must be resorted to. This section of the statute was not enacted for the purpose of

229—23

working a change in the law relating to the construction of wills. Manifestly, it was never intended by the legislature that wills to which this section applied should be construed by any different rule than other wills to which said section does not apply. In a legal sense, everything pertaining to a testamentary disposition of property must *appear by the will,* but it often becomes necessary to resort to extrinsic evidence to determine what persons or things do, in fact, appear by the will. The language of the will may be such that the court cannot determine with certainty what intention is expressed in the will, but when read in the light of surrounding circumstances the court can clearly see what before was not discernible. It was not discernible, not because it did not appear from the will, but because the reader did not have the aid of the lights furnished by the surrounding circumstances. By way of illustrating our meaning, take *Lord Cheney's case,* 5 Rep. Ch. 69. There the testator had two sons, both baptized by the name of "John." He devised his lands to his son John, without in any way designating which one of them he referred to. When the testator used the name "John" he meant a particular son, but the question was, which one did he mean? Upon resorting to extrinsic evidence it was shown that the elder John had been long absent and was supposed to be dead, while the younger John was known to be alive at the time the will was made. Now, in the light of these circumstances it was readily decided that the younger should take the devise. Another illustration is afforded by the case of *Bradley* v. *Rees,* 113 Ill. 327. There the residuary clause devised all the remainder of the testator's lands "to the four boys." The testator had seven sons, but the parol proof showed that three of them were men, married, and had families of their own, while four of them were minors, residing with the testator. It was held that the testator intended the four minors to have the estate. In these and all like cases where a resort to parol evidence is allowable, it is not for the purpose of importing

into the will a new intention not expressed in the will, but for the purpose of enabling the court to determine what the intention, in fact, is, as expressed by the words of the testator in the will.

We regard the case of *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561, as directly in point and conclusive against the contention of appellant on this question. Indeed, we do not see how it would be possible to sustain appellant's contention without overruling that case. There, as here, the will gave all of testator's property, real, personal and mixed, of every kind whatsoever, to testator's wife. At the time the will was executed the testator had two children, and afterwards a third child was born. There was there, as here, no mention or reference to the children, born or unborn. Parol evidence was admitted there of the same general character that was heard in this case, and in answering the argument made against the admissibility of such evidence this court, on page 564, said: "But we do not think the evidence objected to had any tendency whatever to vary or change the intent of the testator as declared in the will. As we understand the record, the evidence was not offered for that purpose. The object of the evidence was to place before the court the circumstances attending the execution of the will in support of and in aid of the intention of the testator as declared in the will, and the court, in the exercise of its discretion, had the right to hear such evidence. In the discussion of this subject it is said in Schouler on Wills (sec. 579) : 'But to aid the context of the instrument by extrinsic proof of the circumstances and situation of the testator when it was executed is constantly permitted at the court's discretion, and this constitutes a proper,—indeed, often an indispensable,—matter of inquiry when construing a will, for whatever a will may set forth on its face, its application is to persons and things external, and hence is admitted evidence, outside the instrument, of facts and circumstances which have any tendency to give

effect and operation to the terms of the will, such as the names, descriptions and designation of beneficiaries named in the will; the relation they occupied to the testator; whether the testator was married or single, and who were his family; what was the state of his property when he made his will and when he died, and other like collateral circumstances. Such evidence, being explanatory and incidental, is admitted, not for the purpose of introducing new words of a new intention into the will, but so as to give an intelligent construction to the words actually used, consistent with the real state of the testator's family and property,—in short, so as to enable the court to stand in the testator's place, and read it in the light of those surroundings under which it was written and executed,"— citing *Little* v. *Giles,* 25 Neb. 313, and *Doe* v. *Hiscock,* 5 M. & N. 363.

In commenting on the force of the fact that the testator had two children living at the time the will was made which were in no way referred to or mentioned in the will, this court, in the same case above cited, on page 567, used the following language: "At the time the will was executed by the testator he had two children then living,—one four and the other two years old. These children were excluded from taking any portion of the testator's estate by the will. Is it reasonable to believe that the testator intended to exclude these two infants and not at the same time exclude another child to be born within the next two months after the will was executed? It seems plain, if the testator had intended to make any distinction between his children then born or unborn, he would have inserted a provision in his will manifesting that intention. In order to disinherit appellant the testator was not required to state the fact in express terms in the will. It is enough that the intention appears from the will, upon consideration of all of its provisions."

The same reasoning applies with special force to the case at bar. Let us look at the circumstances. The testator

had one child,—a bright, intelligent, lovable son, three years old, bearing his father's name, Creighton, and the testimony shows that the testator was devotedly attached to this boy. The testator had retired from business and spent a large part of his time in the company of his son, Creighton. He owned an estate of heavily encumbered and unproductive lands, which required business ability and expedition in handling the same. The testator had a wife in whose business judgment and ability he had unlimited confidence, and he no doubt believed that her maternal devotion to her children could be relied upon to provide for them out of what might be saved of the estate better than the testator could in the embarrassed and entangled condition of affairs that surrounded the property at the time the will was executed. Surrounded by these circumstances the testator made his will, employing for that purpose sixteen words: "I give, devise and bequeath all my property, wherever situated, to my wife, Jane Creighton Peet." What did the testator mean by giving all his property to his wife? Did he mean that if afterwards a child should be born such child should have one-fourth of the property and the wife three-fourths, and the other child, Creighton, none? In our opinion he meant that his wife should have all of the property, to the exclusion of his children then born or to be thereafter born, and we are much influenced in reaching this conclusion by the circumstances surrounding the testator at the time the will was made, parol evidence of which, under the authority of the *Hawhe case,* is clearly admissible in this State.

We freely concede that other courts in other jurisdictions have reached an opposite conclusion with respect to the admissibility of parol evidence under statutes bearing more or less similarity to ours. Perhaps one of the strongest presentations of the opposing view is an opinion of the United States Circuit Court for the District of Nebraska, rendered by Mr. Justice Brewer, in the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Wasserman,* 22 Fed. Rep. 872.

In that case the learned judge felt himself compelled to decide against what he frankly confesses was the real intention of the testator, because, under his view, parol evidence could not aid the difficulty. A quotation from that case is here made merely for the purpose of showing that the rule there applied defeated the intention of the testator: "In this case the primary question I am reluctantly compelled to decide in favor of the complainant, Wasserman. I say reluctantly, for when a man, on the eve of death, having a child five years of age and living with a wife to be delivered of a second child within twenty days, makes a will giving all his property to his wife, I think the common voice will say that he intended no wrong to either the born or unborn child, but trusted to his wife—their mother—to do justice to each, and believed that she, with the property in her hands, could handle it more advantageously for herself and children than if interests in it were distributed. As a question of fact, independent of the statute, I have no doubt that Mr. Wasserman had no feeling either against the born or unborn child, but, having implicit faith in his wife, meant that she should take the entire property, and believed that out of that property and her future labors she would take care of his children. But the legal difficulty is this: The statute says it must be apparent from the will that the testator intended that the unborn child should not be specially provided for. How can any intention as to this child be gathered from the will alone? It simply gives everything to the wife; is silent as to children. If I could look beyond the will, my conclusion would be instant and unhesitating."

Whatever weight this authority might have if this were a case of first impression with this court, it can have none now in the face of our own decision in the *Hawhe case,* where the same authority was pressed upon our attention and this court expressly refused to follow it. This court, on page 569 of the *Hawhe case,* speaking of the *Wasserman case,* said: "While the facts in that case are quite similar

to the facts in this case and the opinion delivered by the eminent jurist seems to sustain appellant's view of the law, we are not inclined to follow it." In the *Wasserman case* are collected a number of decisions of other courts upon which appellant relies, but if the *Wasserman case* be rejected as not good law in this jurisdiction, it would seem scarcely necessary to examine in detail the cases upon which it rests.

The appellant relies with some apparent confidence upon *Lurie* v. *Radnitzer*, 166 Ill. 609, as laying down a different rule from that announced in the *Hawhe case*. We do not regard these cases as in conflict. Indeed, the *Hawhe case* is cited twice in the *Radnitzer case* and relied on as an authority in support of the conclusion reached in the latter case. The cases are clearly distinguishable, and there is nothing said in the later case that in any way impairs the authority of the former.

There is nothing in the New York statute introduced in evidence by appellant, which, considered as a fact in connection with the other surrounding circumstances, will overcome the proofs properly before the court.

It results from what has been said that appellant's second proposition cannot be sustained.

The decree of the court below is right, and the same is affirmed.

*Decree affirmed.*

CARTWRIGHT, FARMER and DUNN, JJ., dissenting:

The provision of the statute is that a child born to any testator after the making of a will shall not be disinherited unless it shall appear by such will that it was the intention of the testator to disinherit such child. It is not necessary that the testator should expressly declare such intention, but it is sufficient if the will fairly manifests it. In the absence of latent ambiguity, such as the cases referred to in the foregoing opinion, in one of which the testator had two sons named John, and in the other made a devise to "the four

boys" when he had seven sons, the intention is to be gathered from the will itself. (*Hayward* v. *Loper,* 147 Ill. 41.) That rule was stated in *Hawhe* v. *Chicago and Western Indiana Railroad Co.* 165 Ill. 561, as follows: "The law is well settled that extrinsic evidence cannot be resorted to to show the intention of the testator where there is no latent ambiguity in the will, but the intention is to be determined from the language used by the testator in the will itself." Evidence as to the circumstances surrounding a testator at the time the will is made is proper, as an aid to an intelligent construction of the language used, by enabling the court to stand in the testator's place and to read the will in the light of those surrounding circumstances; but when that is done, it must appear by the will that it was the intention of the testator to disinherit an after-born child, if the will is to have that effect.

The only facts apparent in this case which have any bearing upon the question to be determined are, that the testator had one child three years old, for whom he made no provision in the will, and that he had a wife, to whom he made a simple devise of all his property. By the will itself the testator manifested an intention to give all his property to his wife and to give nothing to the living child; but, in our opinion, such facts are entirely insufficient to justify the conclusion reached in said opinion that it appears by the will that it was the intention of the testator to disinherit the child born one and one-half years after the execution of the will.

We do not regard the decision in the case of *Hawhe* v. *Chicago and Western Indiana Railroad Co. supra,* either as conclusive of the question involved in this case or as fairly tending to sustain the conclusion reached here. In that case the will was made on the afternoon preceding the death of the testator. By it he gave all his estate to his wife. He had two children when the will was executed, and a posthumous child was born about two months after the execution of the will and his death. He made no allusion whatever to

his living children or to the one which was soon to be born, and in devising all his property to his wife he used language which the court regarded as very significant of an intention that no other person than his wife should, in any event, have any portion of his estate. It was said that the language used meant more than a simple devise; that language could not have been used which would more clearly express an intention that the wife, and she alone, should take and hold the testator's estate to the exclusion of all others, and that if the testator had inserted a clause in his will that no other person should have any portion of his estate, such a provision would have excluded the two children then born and the one thereafter to be born; and yet such a provision would not have made the intention of the testator more definite than the language used. In this case the gift to the wife was an ordinary and simple devise, and one of the controlling reasons for the decision in the *Hawhe case* is entirely wanting. The only other fact regarded as significant in determining the intention of the testator was, that he had two children living and knew that another child was to be born within the next two months, and he made no mention of either. The living children were excluded from taking any portion of the estate, and it was not regarded as reasonable to believe that the testator intended to exclude them and not at the same time exclude the other child soon to be born. It is beyond question that the testator there had in mind both his living children and the one that would soon be born, and must have entertained an intention respecting the share which the child, when born, would take in his estate. It was, therefore, a fair inference that he had the same intention as to all. In this case the child was born one and one-half years after the execution of the will, and as it had no existence when the will was made the testator could have had no intention respecting it, different from that which almost every testator might have in executing a will. Eliminating from the *Hawhe case* the two facts above referred to, and

which formed the basis of the decision, and there would be but little left. We cannot conceive that the decision would have been the same in the absence of such facts.

In the later case of *Lurie* v. *Radnitzer,* 166 Ill. 609, the testator had a wife and three children and a posthumous child was born about three months after his death. In his will he devised his entire estate to his wife and the three living children, giving two-fifths to the wife and one-fifth to each of the three children. In the draft of the will he made a devise to his child as yet unborn and in another place made reference to that child, but before the execution of the will he erased both the devise and the reference. It was held that although the testator gave his entire estate to the wife and living children and erased the devise to the unborn child he did not thereby manifest an intention to disinherit such child. The decision was based on the ground that the will contained no negative expressions whatever concerning the unborn child, and the court said: "The mere fact that the testator knew that such child was likely to be born to him, and that he had such knowledge when he executed his will, would not be sufficient, under the statute, to deprive such child of his share in his father's estate." The statement made in this case that the testator no doubt believed that the maternal devotion of his wife to her children could be relied upon to provide for them is not in harmony with what was there said concerning the intention of the testator, as follows: "Had it been his intention, as contended by appellants, that the provision in the will giving his wife two-fifths of his estate should inure also to the benefit of this child if born alive, we would expect to find something in the will to indicate such intention."

We are of the opinion that it does not appear by the will in question in this case that it was the intention of the testator to disinherit the child born one and one-half years afterward, which had no existence at the time the will was made.